# STATE OF INDIANA, EX REL. GROS CLAUDE *v.* PARISH ET AL.

[No. 22,062. Filed November 26, 1912. Rehearing denied June 26, 1913.]

1. SCHOOLS AND SCHOOL DISTRICTS.—*Repair of School Buildings.— Duty of Township Trustee.*—Under §6410 Burns 1908, Acts 1901 p. 514, and Acts 1911 p. 118, township trustees are charged with the duty of providing and keeping schoolhouses in repair and in healthful and sanitary condition. p. 67.

2. SCHOOLS AND SCHOOL DISTRICTS.—*Repair of School Buildings.— Plans and Specifications.—Duty of Township Trustee.—Statutes.* —The act of 1911 (Acts 1911 p. 118) providing for the construction and remodelling of schoolhouses in accordance with sanitary principles therein specified, confers an implied power at least, if it does not impose a duty, on the school authorities to contract for and provide plans and specifications for the repair of a schoolhouse, the same as in case of construction, when the repair is of such character that scientific knowledge or mechanical skill is reasonably necessary to produce the required results. p. 67.

3. SCHOOLS AND SCHOOL DISTRICTS.—*Repair of School Buildings.— Statutes.—Construction.*—While the act of 1911 (Acts 1911 p. 118), providing for the construction and remodelling of schoolhouses in accordance with sanitary principles therein specified, is to be strictly pursued in so far as its express requirements are concerned, yet, as a remedial statute, it should be liberally construed in order to effectuate its objects. p. 68.

4. TOWNSHIPS.—*Advisory Boards.—Record of Proceedings.*—Section 9590 Burns 1908, Acts 1899 p. 150, requiring the township advisory board to keep a record, and providing that the secretary of the board shall record the proceedings of the board at each meeting in full, and that such record shall be signed before the board adjourns, is mandatory in its terms. p. 68.

5. MANDAMUS.—*Acts and Proceedings of Inferior Tribunals.*—Ordinarily an inferior tribunal may be required by mandamus to do that which it is required by law to do. p. 69.

6.    TOWNSHIPS.— *Contracts.— Expenditures.— Appropriations.*— A contract entered into by a township trustee without any appropriation to pay the debt thereby incurred is void and cannot be validated by a subsequent appropriation, so that an action to compel a township advisory board by mandate to appropriate money to pay for services rendered in preparing plans and specifications for the repair of a schoolhouse will not lie. pp. 69, 70.

7.    MANDAMUS.—*Nature and Scope in General.*—In order that a mandate shall issue there must be both a duty and the power to act in the officer who is to be commanded. p. 70.

From Hancock Circuit Court; *Robert L. Mason,* Judge.

Proceeding in mandamus by the State of Indiana, on the relation of Fred W. Gros Claude, against Pleasant F. Parish and others, constituting the Advisory Board of Sugar Creek Township, in Hancock County. From a judgment for defendants, the relator appeals. *Affirmed.*

*Fitzpatrick, Pixler & Fitzpatrick,* for appellant.
*Earl Sample,* for appellees.

MYERS, J.—This is a proceeding in mandamus to compel the Advisory Board of Sugar Creek Township, Hancock County, Indiana, to make a record of its proceedings relative to a contract of employment of relator to prepare plans and specifications for heating and ventilating a school building, and to correct other records, and to make an appropriation for payment of relator. The sole question is the sufficiency of the complaint, to which a demurrer was sustained on account of insufficient facts to constitute a cause of action.

The material allegations of the complaint are, that the named persons defendant constitute the Advisory Board of Sugar Creek Township in Hancock County, Indiana; that one Burkhart is the trustee of the township, and these parties occupied such respective positions at the time of the various proceedings set forth; that Sugar Creek School Township is the owner of a school building and grounds located in school district No. 7 of that township; that the school building was declared by the trustee to be unsanitary and unfit for school purposes, being improperly heated and ventilated;

that the trustee decided to remodel, repair and rebuild said school building, and install therein a proper heating and ventilating system; that he called a special meeting of the advisory board, for the purpose of determining whether an emergency existed for the expenditure of funds belonging to said township, or for securing necessary funds on the credit of said township, for the purpose of remodelling, repairing and rebuilding said school building, and installing therein a proper heating and ventilating system; that the advisory board was notified to convene in special meeting at the building on April 29, 1911, and did meet on said day, all being present, including the trustee and relator; that the board found that there was an emergency for remodelling and rebuilding the building and installing a heating and ventilating system, and that it would require the services of an expert heating and ventilating engineer to prepare plans and specifications to conform to the law, and file them with the board as an itemized statement of the material and labor required to install the system; and that the board authorized the trustee to enter into a contract with a competent engineer to prepare plans and specifications for bidders, and that the contract should provide for his compensation, and on April 29, 1911, the trustee did enter into a written contract with relator pursuant to that direction, and the contract was approved by a majority of the board, by the terms of which among other things it was agreed that for the compensation of five per cent relator agreed to furnish plans and specifications for the heating and ventilating of the school building, reserving the right to bid upon the work, and if awarded the contract, no charges for the plans and specifications to be made. If the work upon said building be postponed, or abandoned, the compensation for the work done was to be $75. All plans and specifications were to be returned to relator until such time as the trustee decided to let contract for the work and relator was to furnish four complete sets of blue-prints and specifi-

cations for the accommodation of bidders.  In all trans-
actions between the trustee and contractors, relator was to
act as "owner's agent," and his duties and liabilities were
those of agent only.  Contracts and specifications were instru-
ments of service and as such were to remain the property of
relator.

That the trustee requested and it was promised that the
record should be made in accordance with the facts, and that
such board neglected, failed and refused to do so, and
still refuses; that relator acting in good faith, and with
knowledge of the action taken and the representation of the
chairman of the board, that the record would be made in
accordance with the facts, performed his part of the contract
and prepared and submitted the plans and specifications
to the board and they were accepted and approved by the
board, and made the basis of advertisement for bids, and the
work was let on June 13, 1911, to a third person, based upon
such plans and specifications for the sum of $3,902.80, and
an appropriation was made on June 15, 1911, to cover the
contract price for the work, but the five per cent commission
for the services of relator, in the sum of $196.64, was not
included, and that such board refused at the time the ap-
propriation was made for the work, and has since refused,
to make an appropriation to pay him.  It is also alleged that
there is present in the special school fund a sum sufficient to
pay relator out of which to make an appropriation therefor.

The points made against the complaint on demurrer are,
that the township trustee is limited in power to those powers
expressly conferred by statute; that in no event can a debt
be created against the township by trustees without special
authority; that a township trustee cannot contract until
the contract is approved by the advisory board; that a
township trustee cannot by contract create a debt against
the township in the absence of an appropriation to pay the
debt; that the advisory board only can create a debt against
the township, and then only as provided by statute; that con-

tracts made in violation of the statute are void; that a claim against a township must be based on the provisions of a statute or contract entered into by statutory authority; that after a trustee has determined the necessity for a schoolhouse, he must sign a contract with the bidder, approved by the board; that the special school fund cannot be used by the trustee to pay a debt against the township unless authorized by the advisory board; that a record cannot be made after the contract is entered into to make it valid; that a contract made in the absence of an appropriation for that purpose is void.

1. Township trustees are charged by statute with the duty of providing and keeping schoolhouses in repair and in healthful and sanitary condition. §6410 Burns 1908, Acts 1901 p. 514; Acts 1911 p. 118. Before a building can be constructed, trustees prior to 1911 were required to "procure suitable specifications therefor, to be used by bidders * * *. If it is necessary to make repairs * * * other than current or incidental repairs," they were required to "make an itemized statement of the nature and character of the work, to be made for the use of bidders." §9598 Burns 1908, Acts 1899 p. 150.

2. By the act of 1911, *supra,* many things are required to be done to conform to the provisions of the act, of such character that it will be implied that the services of skilled persons are necessary to conform to such requirements. Trustees might or might not be able of their own knowledge to devise proper and efficient means of accomplishing the results required, and heavy penalties are imposed for failure. It may be safely assumed that a majority of the trustees are not qualified to do so, especially as to heating and ventilating. The provisions of §9598, *supra,* that "the trustee shall make an itemized statement of the nature and character of the work * * * for the use of the bidders," certainly cannot cover the requirements of the act of 1911, when the work is of such character as that nothing

short of plans and specifications will give any idea to bidders as to what is required, or as to what they are to bid upon. This statute should receive a reasonable construction in consideration of the specific matter in hand, and the requirements concerning it. It is in our judgment an implied power, if not a duty of the school authorities to provide plans and specifications for work of repairs, the same as in case of construction, when from their character, scientific knowledge or mechanical skill is reasonably necessary to produce the required results. *Advisory Board, etc.* v. *State, ex rel.* (1905), 164 Ind. 295, 73 N. E. 700; *Mitchelltree School Tp.* v. *Hall* (1904), 163 Ind. 667, 72 N. E. 641, and cases cited; *Posey Tp.* v. *Senour* (1908), 42 Ind. App. 580, 86 N. E. 440. It was pointed out in *Patterson* v. *Middle School Tp., etc.* (1912), 50 Ind. App. 460, 98 N. E. 440, that a contract by a township trustee for transporting pupils was valid without the concurrence of the advisory board, as an implied power, and that certain contracts are invalid because the statute makes them so. There is certainly as much reason in holding that contracting for plans and specifications under the conditions here shown is at least an implied power of township authorities, under the requirement to furnish properly heated and ventilated schoolhouses, and while

3. the statute is to be strictly pursued in so far as its express requirements are concerned, yet as a remedial statute it should receive a liberal construction, when necessary to effectuate its objects. *Lyle* v. *State, ex rel.* (1909), 172 Ind. 502, 88 N. E. 850.

The statute is specific that "such board shall keep

4. a record of their proceedings in a separate book to be furnished by such trustee, and kept as a part of the records of the township, to be known as the record of the advisory board of such township, and to remain in the custody of the chairman of such board. Said board shall elect one of its members secretary for said board, who shall record the proceedings thereof at any meeting, in full under the direc-

tion of the board, *which shall* be *signed before the board adjourns.''* (Our italics.) §9590 Burns 1908, Acts 1899 p. 150. This statute seems to be mandatory, and it has been so held, as to ''any meeting'' of the board. *First Nat. Bank* v. *Van Buren School Tp.* (1911), 47 Ind. App. 79, 83, 84, 93 N. E. 863. The fact that the record is required to be made before the board adjourns, and that the record is to remain in the custody of the chairman, instead of the possession of the secretary as would ordinarily be the case, is significant of the purpose of the act. Ordinarily an inferior tribunal may be required by mandamus to do that which it is required by law to do. Acts 1911 p. 541, §2; *Advisory Board, etc.* v. *State, ex rel., supra.* But other considerations enter into the question here. Here we have an express statute as to what shall be done, and it has been held a condition precedent to acquiring any rights, that a record declaring an emergency, or the proceedings of any meeting, must be made. *First Nat. Bank* v. *Van Buren School Tp., supra.* Section 9595 Burns 1908, Acts 1901 p. 415, provides that ''In no event shall a debt of the township be created except by the advisory board of such township, and in the manner herein specified.'' Section 9601 Burns 1908, Acts 1899 p. 150, provides that ''All contracts made in violation of this act shall be null and void.''

It has been the uniform holding of this court and 6. the Appellate Court that a contract made without an appropriation to pay the debt thereby incurred, is void. *Waters* v. *State, ex rel.* (1909), 172 Ind. 251, 88 N. E. 67; *Teeple* v. *State, ex rel.* (1908), 171 Ind. 268, 86 N. E. 49; *State, ex rel.* v. *Anderson* (1908), 170 Ind. 540, 85 N. E. 17; *Pipe Creek School Tp.* v. *Hawkins* (1912), 49 Ind. App. 595, 97 N. E. 936; *Patterson* v. *Middle School Tp., supra.* In the latter case a distinction is pointed out between the things required to be done under the township advisory board act, and other provisions of our statutes, but the doctrine is there reasserted and cases cited to the point that township

trustees and advisory boards must act in conformity to the statutes, and that those dealing with them are bound at their peril to ascertain that they have so acted.

It is elementary that in order that a mandate shall issue, there must be both a duty and the power to act, in the officer who is to be commanded. *Teeple* v. *State, ex rel., supra,* and cases cited; *Waters* v. *State, ex rel., supra,* and cases cited. If a record must have been made when the contract was entered into, and an appropriation then made, and a record made of that act, it is clear that it cannot be made at some later time. That would be to render valid in another way, a thing which in its inception was invalid for failure to observe the statutory requirement, and which can only be valid by being done in a given way. If a record can be made afterward to validate that which was invalid under this particular statute, the statute would be nullified, and it is mandatory. It is conceded by relator by bringing this action that a record is necessary, to show both the authorizing of the contract and the making of an appropriation, and it is directly alleged that no appropriation was made at any time. It was doubtless the object of the statute to prevent just what relator here seeks to have done, so far as making a record is concerned, and if as we have seen, the contract must have been preceded, or accompanied by an appropriation, a record afterward would be of no avail, that is, no duty is shown, for the discharge of which mandamus will lie. As it appears affirmatively that no appropriation was made, and as none can now be made so as to validate a contract which was invalid by reason of the lack of an appropriation, the relator can have no interest, and in having the record made as he claims no duty to make it is shown, and the question is practically a moot one.

The purpose of the statute seems to have been to put the burden upon those dealing with these particular officers, of

seeing to it that the necessary authority and the record of it, and an appropriation and a record of it, have been made; failing in these, the statute declares the contract void.

That many hardships may arise from this state of the law, we do not doubt, and in this case it seems so to us, but we are charged with the duty of enforcing the law as the legislature has made it, without power to relieve from hardships in individual cases. It is alleged that the board "fraudulently failed, refused and neglected to make an appropriation." No fact is alleged showing in what respect fraud was practiced, besides, relator had it in his power before he did anything, to have seen to it that the proper record of his contract and an appropriation and a record of it, had been made, and that duty was imposed upon him by statute, as a condition of binding the school township.

We see no escape from these conclusions, and the judgment is affirmed.

NOTE.—Reported in 99 N. E. 977. See, also, (1, 2, 3) 35 Cyc. 944; (4) 38 Cyc. 620; (5) 26 Cyc. 250; (6) 38 Cyc. 645; (7) 26 Cyc. 162, 166. As to records, etc., of towns, cities and school districts, see 13 Am. St. 550.

[No. 21,750. Filed October 30, 1912. Rehearing denied June 26, 1913.]