CRESS, TRUSTEE, ET AL. *v.* STATE OF INDIANA, EX REL. ET AL.

[No. 24,841. Filed July 1, 1926. Rehearing denied October 15, 1926.]

1. SCHOOLS AND SCHOOL DISTRICTS.—*Abandonment of project of building schoolhouse after site has been obtained, architect employed and bonds sold.*—Where a township trustee and advisory board have determined that a building for a joint high and elementary school shall be erected on a designated site, which has been acquired, taken possession of and improved for the specific purpose of a site for said joint high and elementary school, and where an architect has been employed who has prepared plans for said building, contracts have been let for the construction thereof, and bonds sold and appropriations made to pay the cost thereof, the successor to such trustee cannot abandon the project and refuse to go ahead with the work. p. 333.

2. OFFICERS.—Power to undo an act of public officials will not be implied from the mere grant of power, in the exercise of a sound discretion, to do the act, but such act cannot be undone unless the power to undo it has been expressly reserved. p. 333.

3. SCHOOLS AND SCHOOL DISTRICTS.—*Notice not required that bids will be received for preparing plans and specifications for erection or repair of public buildings.*—Section 9 of the Township Advisory Board Law (Acts 1899 p. 150, §12071 Burns 1926, §9598 Burns 1914) does not require that notice shall be published and bids received for the work of preparing plans and specifications for the erection or repair of public buildings of the township and for superintending the work thereon, although it does require notice and competitive bids for the work of erecting or repairing such building. p. 335.

4. SCHOOLS AND SCHOOL DISTRICTS.—*Power of township trustee to cancel contract for failure to give bond.*—While §9 of the Township Advisory Board Law (Acts 1899 p. 150, §12071 Burns 1926, §9598 Burns 1914) provides that the township trustee shall require the successful bidder for township work to give a bond with approved security, it does not authorize the trustee to cancel a contract because of the failure to give

Cress, Trustee, *v.* State, ex rel.—198 Ind. 323.

such bond where the trustee has refused to proceed with the execution of the contract for other reasons, and was never willing to accept and approve any bond. p. 336.

5. SCHOOLS AND SCHOOL DISTRICTS.—*Acts of township trustee in regard to school site held to give school township legal right to build schoolhouse thereon, although it did not have legal title.*—The acts of a township trustee in selecting a schoolhouse site, making entry thereof in his record, taking possession of the site thus selected and making improvements thereon with the consent and acquiescence of the owner thereof, gave the school township a legal right to build a schoolhouse thereon, although the purchase money had not been paid nor the title formally transferred to the township. p. 337.

6. MANDAMUS.—*Mandate is proper remedy and school patrons and taxpayers proper relators in action to compel township trustee to proceed with construction of schoolhouse.*—Mandate is the proper remedy and school patrons and taxpayers are proper relators in an action to compel a township trustee to proceed with the erection of a schoolhouse where a site has been acquired, improvements thereon made, enforcible contracts let for the construction of the building, and obligations of the township created amounting to many thousands of dollars. p. 337.

7. SCHOOLS AND SCHOOL DISTRICTS.—*Reduction of value of taxable property before bonds were issued would not make issue as of date of sale unconstitutional.*—Where, at the time township school bonds were sold, the taxable property of the township was more than fifty times the debt to be created by the sale of said bonds, the fact that during subsequent years, while the issue and delivery of the bonds was delayed by an injunction wrongfully granted and thereafter set aside on appeal, the value of the taxable property of the township was reduced, would not make an issue of bonds as of the date they were sold unconstitutional (Art. 13, §1, Constitution, §227 Burns 1926). p. 337.

8. MUNICIPAL CORPORATIONS.—*Constitutional limitation of municipal indebtedness has reference to time liability is incurred, and not to time evidences of indebtedness are actually issued.*—Section 1, Art. 13, of the state Constitution (§227 Burns 1926, §220 Burns 1914), prohibiting the creation of a municipal debt in excess of two per cent. of the assessed valuation of the taxable property of the corporation, has reference to the time when the liability is incurred, and not to the time when the act of signing and delivering written evidences of the indebtedness is performed. p. 337.

From Miami Circuit Court; *Albert Ward,* Judge.

Action of mandate on the relation of Albert P. Flynn, the purchaser of bonds of a school township, against Isaac E. Cress, township trustee, to compel the issuance of the bonds, wherein certain school patrons and taxpayers intervened and filed cross-complaints. From an adverse decree, the defendant appeals. *Affirmed.*

*C. Y. Andrews* and *W. C. Overton,* for appellants.
*Conrad Wolf, Earl B. Barnes, C. W. Roll, George B. Shenk* and *Ball, Kirkpatrick, McClure & Elliott,* for appellees.

EWBANK, J.—The principal question for decision is whether a determination by the trustee and advisory board of a school township that a building for a joint high school and primary school shall be erected on a site chosen, designated, taken possession of and improved, becomes binding at any stage of the proceeding before the building is actually constructed, or whether the township trustee or a new trustee on being elected and taking his office, has the right, in his discretion, to abandon the project and refuse to erect the building, notwithstanding the site has been so selected, taken possession of and improved, bonds have been sold, an appropriation has been made to pay the cost, and contracts have been let for the erection and equipment of the building. The trial court decided that after the matter had advanced to this stage, a new trustee coming into office could be compelled by mandamus to go forward with the construction of the building, while appellant trustee insists that he had the right, in his discretion, to abandon it whenever he chose, leaving to their actions at law for damages any persons with whom contracts had been made, and leaving the taxpayers who desired a new school house and wished to avoid

paying damages on behalf of the township for the breach of such contracts without any remedy.

Appellant, the new trustee of the township, was the defendant below. The purchaser to whom the bonds of the school township in the amount of $95,000 had been sold commenced an action as relator to compel the new trustee to issue and deliver the bonds and to receive the purchase money. Certain taxpayers and school patrons of the township filed a cross complaint as relators, asking that the new trustee be commanded not only to issue the bonds and receive the purchase money for them, but also to complete the acquisition by the township of title to the school site that had been selected and taken possession of, and to complete the school house. The architect who had been employed to draw plans for the school house and to supervise its construction filed a cross-complaint asking the same relief. After a demurrer to each of these pleadings had been overruled, the defendant (appellant) filed an answer of denial, and a second paragraph of answer alleging that there had been certain irregularities in the proceedings which led up to the sale of the bonds, and in those which led up to the execution of the contracts for the construction of the school house and that the appropriation of the school site had not been regular and had not been completed by payment of the purchase money and transfer of title to the township. Replies of denial and a second paragraph of reply by the taxpayers setting up the alleged fact that all matters put in issue by defendant's second paragraph of answer had been fully adjudicated in a former action against the township trustee on behalf of all the taxpayers of the township were filed, and also a third paragraph of answer alleging that certain irregularities occurred in the proceedings that led up to the alleged action of the township trustee and advisory board relied

on by relators, and replies of general denial to this paragraph were filed. Upon proper request, the court made a special finding of facts, on which it stated conclusions of law against the defendant, and judgment was entered accordingly, commanding the defendant trustee to issue and deliver the bonds upon payment of the purchase money, to approve the builders' bonds tendered by the contractors, to take the further steps necessary to acquire title to the school site selected by his predecessor in office, to notify the contractors immediately to proceed with the construction of the building, and to authorize the architect to perform his duties as architect in connection therewith. The special finding of facts is fairly sustained by the evidence, and appellant's exceptions to the conclusions of law present the only questions which we find it necessary to consider.

The court found, in substance, that for four years and up to the first of January, 1923, Ora S. Flora was the trustee and three persons named were the members of the township advisory board of Ervin school township, Howard county, Indiana. That on December 2, 1920, the advisory board met in special session upon service of notice in writing by the trustee to consider the construction of a consolidated grade and high school building, and at that time instructed the trustee to make necessary arrangements and plans for the construction of such a building. That pursuant thereto, the township trustee, on January 20, 1921, gave notice by publication and posting of the intention of the school township to issue evidences of indebtedness in excess of $10,000 for the purpose of purchasing a site and building such school house, paying an architect for his work, and paying other necessary expenses connected with the construction of the proposed building. That there was no objection or remonstrance by any tax-

payers of the township. That on written notice given by the trustee to each member of the advisory board of a called and special meeting on July 22, 1921, stating fully the purpose of the meeting, the advisory board met on said date and unanimously agreed to take up and determine the question whether or not an emergency existed for the purchase of grounds and the construction of a centralized grade and high school building thereon in said township, and authorizing the trustee to borrow $95,000 by the sale of bonds of the school township to provide funds for the same, and the board then found an emergency existed for the purchase of said ground, and for providing the funds and constructing the proposed building, at a cost of $95,000, the same being in excess of any sum available therefor then on hand by said township or available out of any annual existing levy of taxes, and found that it was indispensably necessary to issue bonds of said school township in the sum of $95,000 to provide funds for the purchase of said grounds and construction of said building, and empowered and ordered the trustee to sell such bonds in the aggregate sum of $95,000, of the denominations, and at the interest rate, and payable and maturing, as provided in the order. And the board appropriated the sum of $95,000 for the purchase of said ground and the construction of said school building. That all of said proceedings were duly recorded by the board at that time and place, and the record thereof was duly signed by each member of the board before adjournment, and was attested by the trustee. That neither Ervin school township nor Ervin civil township had then nor has now funds with which to procure grounds and to construct, equip or furnish such consolidated grade and high school building without issuing bonds. That the total net value of all taxable property in said township in the years 1920 and 1921

exceeded $5,400,000, but for each of the years 1922, 1923 and 1924 was less than $4,200,000. That on January 4, 1920, said township trustee decided and elected to locate the school building on a certain designated three-acre tract of land, and made and entered in the trustee's record of said township an order to so locate it and duly signed the record, and thereafter caused said three-acre tract to be surveyed and set off by stakes and took possession of it, and constructed thereon a drain of about 100 feet in length, all with the knowledge and consent of the owner who was and is willing that the school house be located thereon. That no appeal from the decision so to locate the school house was ever taken and no question relative to such site was ever raised except by defendant in defending this action. That after said resolution and order was entered on July 22, 1921, upon written notice by the trustee to each member of the advisory board of a special meeting for such purpose, all the members of the advisory board met with the township trustee at his office at the time fixed in said notice, on August 25, 1921, and, by the unanimous vote of the advisory board, authorized and directed the trustee to enter into a contract with the architect cross-complainant to furnish plans and specifications for the new consolidated grade and high school building to be erected on that site in said township, and appropriated the sum of $4,500 for that purpose, and the board then advised the trustee to readvertise for the sale of bonds for the construction of said building at a date to be fixed by the trustee, all of which proceedings were recorded by the advisory board in its record and duly signed by the board before adjournment, and attested by the trustee. That thereafter, the trustee entered into a written contract with said architect to furnish plans and specifications for the school building and to superintend the erection

thereof, after which said architect prepared complete plans and specifications for the proposed building and gave them to the contractors bidding for the work, which plans and specifications were approved by the State Board of Health, the State Board of Accounts, the advisory board and the township trustee; and he attended the letting of contracts, and thereby earned under said agreement the sum of $2,274.17, which is wholly unpaid, and can only be paid from a sale of bonds. Facts were found showing that due notice of the letting of the contracts and of the proposed sale of bonds were given according to law, all of which notices designated the site so selected as the place where the building should be erected. That on September 22, 1921, the advisory board met at the school house in district No. 5, pursuant to a written notice served by the trustee on each member of said board advising them that a meeting would be held at said time and place to receive bids on the new school building and on the proposed bond issue to pay for the same, and also bids for the construction of the drain leading up to the school building, and of considering the same, and also to make appropriations for the construction and equipment and ditching necessary for such building. That the township trustee, architect and all members of the advisory board were present at the time and place fixed in the notice, and bids in writing were received by the trustee in the presence of the advisory board, at which time E. L. Danner made a bid of $68,245 for the construction of the building, the Orth Plumbing Company one of $18,075 for the plumbing, heating and sewerage, and Ira Elkins one of $600 for the drainage, and Albert P. Flynn bid par and accrued interest to date of delivery for bonds of the school township in the amount of $95,000, all of which bids were in writing, and were opened and read publicly at the meeting at

that time and place, and were accepted by the trustee, by and with the consent of the advisory board. That each of said bidders then entered into a contract in writing with the trustee for the performance of his bid, and each of said contracts was signed by the trustee and by the other party thereto. That at said meeting the advisory board made appropriations of $68,245 for the construction of the school building, of $18,075 for the plumbing, heating and sewerage of such building and of $600 for the construction of a ditch, each of which appropriations was made by the unanimous consent of all the members of the board, out of the proceeds of the sale of bonds at that time contracted to be made, and said proceedings and appropriations were entered of record by the advisory board and signed by the members thereof before adjournment and attested by the trustee. That each of said bidders deposited with the trustee a certified check as required by the notice to bidders, each of which checks of the several successful bidders was kept and retained by said trustee, and turned over by him to defendant as his successor in office, who ever since has held the same, except that defendant, on April 4, 1923, mailed to relator Flynn the check deposited by him, whereupon Flynn indorsed it so as to make it payable to the order of defendant as trustee, and returned it to him, and he has since held it subject to the order of Flynn. That no objection was ever made to the amount or validity of the checks deposited, and no demand or request was ever made for a bond that was not given. That on September 20, 1921, one John C. F. Brown, a resident taxpayer of Ervin school township, on behalf of himself and two hundred other taxpayers of said township, brought an action against the township trustee in which the trial court made a special finding of facts with conclusions of law, and entered an order and judgment declaring

that the acts of the township and its officers in attempting to construct the school building were void, and that the construction of the building and the proposed sale of bonds were enjoined. But thereafter, in March, 1923, the Appellate Court of Indiana reversed that decision and issued a mandate acquiesced in by all parties, in obedience to which the circuit court restated its conclusions of law and adjudged that the law was with the defendant in said cause, and that the plaintiff therein take nothing and the defendant recover his costs, which judgment ever since has been and still is in full force and effect. That thereafter the defendant, having taken the office of township trustee on January 1, 1923, before the last mentioned judgments were entered, refused to proceed further and would have refused to accept any bond from either of said contractors to secure the faithful performance of their several contracts, if such bonds had been tendered to him. That said Elmer L. Danner did execute his bond with sufficient freehold surety to assure the faithful performance of his said contract on April 9, 1923, and tendered the same to defendant's attorney, which said tender of said bond was acknowledged by the attorney for and on behalf of defendant trustee, and ever since the said Danner has been able, ready and willing at all times to execute and deliver to defendant trustee a good and sufficient bond to assure the faithful performance of his contract. That defendant trustee refuses to take any steps whatever to build the school house, or to issue the bonds of the school township or to deliver them to Flynn or to anybody as provided by the contract with Flynn, or to take any steps pursuant to either or any of the contracts so made by his predecessor in office, and has announced that he will not build the school house or perform any of said contracts. That on said date of September 22, 1921, relator Flynn was and ever

since has been able, ready and willing to pay to the trustee the amount of his bid, and, before this action was commenced, repeatedly made demand upon defendant trustee in writing for the delivery of said bonds, but defendant refused and now refuses to deliver the same. That after said contracts were made, the advisory board duly made a levy in the year 1921, as required by law, for a tax to meet the indebtedness created by said bond issue, and, at the proper time in each of the years 1922 and 1923, made a like tax levy for that purpose, all of which taxes except the second installment levied in the year 1923 had been duly collected and were in the treasury of said school township at the time of the trial.

The principal question, stated above, as applied to the facts recited in the special finding, was correctly answered in the affirmative by the trial court. The 1, 2. statute which confers upon the trustee of a township having an assessed valuation of more than $600,000 of taxable property, wherein there is no established high school nor any city nor town containing a high school, and wherein there have been eight or more resident graduates of the township elementary schools in each of the two years last past, authority to establish a high school or a joint high school and elementary school, if in his discretion he shall determine to do so, does not purport to give a like discretion to nullify his determination on that subject after it has once been made, or to set aside and nullify the establishment of such a school once determined upon, after contracts for its construction and for the sale of bonds to pay the cost of building it have been entered into which are binding upon the township in favor of third persons. §6842 Burns 1926, §6584a Burns 1914, §1, Acts 1913 p. 331. And power to undo an act once done will not be implied from the mere grant of power, in

the exercise of a sound discretion, to do the act.   The public, like any individual, may refrain from doing acts or making contracts.   But an act once done or a contract entered into, whether by an individual or by a municipal corporation on behalf of the public, cannot be undone and nullified unless the power to undo it has been reserved.   And a township trustee will not be held to possess implied power to disestablish· a high school whenever he may wish to do so, merely because the statute expressly gives him power in his discretion to establish such a school, where nothing is said in the statute about conferring a discretionary power to undo what he may have done.   An officer of a municipal corporation having an uncontrolled discretion either to do or not to do a particular thing which, if done, will affect private individuals and the public, may so far bind himself and the municipality he represents by determining upon a course of action and doing acts pursuant to that determination, that neither he nor his successors in office can unmake· the decision thus made and nullify the effect of the acts thus done.   The newly-elected trustee, on taking his office, occupied the same position and had the same rights and was subject to the same duties as the old trustee if he had continued in office.   And after the former trustee had exercised his discretion by determining to build a new school house on a particular site, had convoked the advisory board of his township in lawful session and obtained from them authority to issue and sell bonds and enter into contracts for the construction of the proposed school house, and, by and with their authority given in lawful session, had entered into binding contracts for the sale of such bonds and the erection of a school house at the place selected, on which contracts the township might be liable in damages unless they should be per-

formed, the discretion with which the law invests a township trustee in determining whether or not a school house shall be erected must be deemed to have been exercised.

In addition to finding that the trustee employed the architect under authority of a unanimous vote of all members of the advisory board when in session pursuant to a written notice by the township trustee of a called meeting for the purpose of making an appropriation to pay architects for making plans and specifications and superintending the construction of the consolidated grade and high school building in that township and to authorize the employment of architects, and for other purposes, and that the township trustee entered into a contract in writing with the architect to pay the amount appropriated as compensation for the work of furnishing plans and specifications for said school building and superintending the construction thereof, which the architect agreed to do, the special finding recited that the trustee did not give any notice by posting at any places in the township or by publication in any newspaper in the county that bids would be received or contracts entered into for preparing plans and specifications or for superintending construction of said building, and did not demand or receive from the architects and the architects did not give or offer to give a bond for the faithful execution of the contract. But the statute which provides that all contracts by a township trustee for erecting or repairing school houses where the contemplated expenditures in any one class will be $500 or more shall be let only after posting and publishing notices, commences with the following provision: "If a trustee finds it necessary to erect a new school house, he shall procure suitable specifications therefor, to be used

by the bidders in bidding and in the construction of such house." §12071 Burns 1926, §9598 Burns 1914, §9, Acts 1899 p. 150, 156.

And all that it says on the subject of competitive bidding is in relation to the purchase of school supplies and entering into contracts for the construction and repair of buildings and bridges, the concluding provisions being as follows: "At the letting, all the work or supplies in any one class shall be included and let in a single contract. * * * When a bid is accepted, a proper contract shall then be reduced to writing for such building, repairs or supplies, as the case may be, and be signed by the successful bidder and the trustee, who shall require the bidder to give bond with security, to be approved by him, for the faithful execution of such contract." §12071, *supra*. This section does not require that notice shall be published and bids received for the work of preparing plans and specifications to be used in advertising for and receiving bids for supplies and work in erecting and repairing buildings, and the employment of an architect without competitive bidding was not unlawful.

The language quoted above that "the trustee shall require the bidder to give bond with security to be approved by him, for the faithful execution of 4. such contract," does not give the trustee power to cancel a contract once entered into because of the contractor's failure to give a bond, where the trustee never has required or asked for a bond, but has refused to proceed with the execution of the contract for reasons other than the lack of a bond and never has been willing to accept and approve any bond whatever.

The act of the former trustee in selecting a school house site, making an entry of that fact in his record,

taking possession of the site thus selected and
5. making improvements thereon, all with the consent and acquiescence of the owner, operated to
give the school township grounds on which it lawfully
might build the school house, although the purchase
money had not yet been paid nor the title formally
transferred to the school township.

The determination by the trustee to erect a school
house on the site selected and the acts done in carrying
out that determination by which he imposed upon
6. the school township a contract liability to execute and deliver to the purchaser $95,000 of
school township bonds, and to pay the architect, the
general contractor, the plumber and the man. employed
to dig the drain, respectively, sums aggregating more
than $90,000, charged the trustee with a duty on behalf of the public to carry his determination into effect
by causing the school house to be constructed. And
the school patrons and taxpayers of the school township were proper relators in an action to enforce performance of that duty. *State, ex rel.,* v. *Black* (1906),
166 Ind. 138, 140, 76 N. E. 882; *Wampler* v. *State, ex
rel.* (1897), 148 Ind. 557, 572, 47 N. E. 1068, 38 L. R.
A. 829; *Board, etc.,* v. *State, ex rel* (1882), 86 Ind. 8,
12. And the other relators were sufficiently shown to
have an interest in the issue and sale of the bonds to
enable them to maintain their respective actions.
*Temple* v. *State,* ex rel. (1916), 185 Ind. 139, 113 N.
E. 233.

All steps leading up to the issue of the proposed township bonds, including the sale of the bonds and the execution of a written contract for their delivery,
7, 8. having been taken and done when the taxable
property in the township was more than fifty
times the township debt thereby created, the mere fact

that in the years during which the issue and delivery of the bonds was delayed by an injunction wrongfully issued and afterward reversed, and by the wrongful refusal of the new trustee to perform duties imposed upon him by the acts of his predecessor in office, the assessment for taxation of the property in the township was reduced, does not make an issue of bonds as of the date when they were sold unconstitutional. The provision that, "No political nor municipal corporation in this state shall ever become indebted, in any manner or for any purpose, to an amount, in the aggregate, exceeding two per centum on the value of the taxable property within such corporation, to be ascertained by the last assessment for state and county taxes previous to the incurring of such indebtedness." (Indiana Constitution, Art. 13, §1, §227 Burns 1926) has reference to the time when the liability is incurred, and not to the time when the manual act of signing and delivering written evidences of such liability is performed. And, as we have seen, the liability for the $95,000 of bonds was incurred when the bonds were sold and a binding contract was entered into for their execution and delivery.

The judgment is affirmed.