UNION SCHOOL TOWNSHIP OF ST. JOSEPH COUNTY *v.* MOON.

[No. 26,393.   Filed November 2, 1933.]

*Seebirt, Oare & Omacht,* for appellant.

*Lemuel Darrow, Earl Rowley,* and *C. V. Shields,* for appellee.

MYERS, C. J.—Action by appellee against appellant to recover an alleged balance due him upon a written contract for legal services rendered appellant. Appellant's demurrer to the complaint for want of facts was overruled. Verified answer in general denial. Trial by jury and verdict for appellee in the sum of $450. Appellant's motion for a new trial was overruled and judgment for appellee. Appellant appealed and assigned as errors the overruling of its demurrer to appellee's complaint and the overruling of its motion for a new trial.

The complaint, insofar as the facts therein are essential to the decision of the questions presented by this appeal, in substance, alleges that on March 5, 1921, a special meeting of the advisory board of appellant was had, at which meeting all the members of the board and the trustee were present, and at which meeting the subject matter under consideration was the construction of an addition to a school building located at Lakeville in appellant township; that at this meeting "the advisory board declared an emergency and made an

appropriation for the payment of plaintiff and others and thereafter authorized the issue of bonds in the sum of $55,000 for the building of said schoolhouse, attorney's fees and other incidental expenses;" that the advisory board authorized the trustee to employ appellee to act as an attorney for the township and to advise the trustee and members of the advisory board with reference to the building of the schoolhouse; that thereafter the township trustee, on behalf of the township, pursuant to the "order and authority of the advisory board of record, entered into a written contract" with appellee by which the township was to pay appellee 3% of the bond issue for his services as an attorney, which contract was made a part of the complaint by exhibit; that the bonds so authorized were issued and sold. Full performance of the contract by appellee on his part is alleged and the balance due him for services is shown. The contract appears to be signed "Union School Township by Frank A. Barkley, Trustee Union Township, Arthur Moon (Second Party)."

Appellant insists that its demurrer to the complaint for want of facts should have been sustained for the reason that it fails to allege facts showing a compliance with §12068, Burns 1926 (§16107, Baldwin's 1934) in that (1) it fails to show that the contract in suit was created by the township advisory board or that it was recorded in full in the minutes of the board meeting; (2) that while the complaint shows that the contract was authorized at a special meeting of the board which declared an emergency, yet it fails to allege the cause of the emergency or that an emergency existed "for the expenditure of any sums not included in the existing estimates and levy," or that there was an appropriation of money on hand to satisfy the contract.

There can be no doubt about the rule in this jurisdiction requiring a party claiming the benefit of a

statute to allege facts showing himself entitled to its provisions. *Gruber, Trustee* v. *State ex rel.* (1925), 196 Ind. 436, 148 N. E. 481. Appellee, in the present case, is relying on a written contract alleged to be executed by appellant. This action cannot be classed as an extraordinary proceeding calling for strict rules of pleading, but it is one where the complaint, challenged for want of facts, is governed by our civil code (cl. 2, §359, Burns 1926, §110, Baldwin's 1934), which merely requires "A statement of the facts constituting a cause of action in plain and concise language, without repetition, and in such manner as to enable a person of common understanding to know what is intended."

This is not an action in mandamus in which one of the elements to be shown in the complaint is a present power on the part of the respondent to do the thing demanded. Hence, that class of cases, although several of them have been cited, have no bearing upon the question of the sufficiency of the pleading in the present case. The statute upon which appellant relies expressly gives to the advisory board the power to "determine whether an emergency exists for the expenditure of any sums not included in the existing estimates and levy. In the event that such an emergency is found to exist, said board may authorize, by special order entered and signed upon the record, the trustee to borrow a sum of money, to be named, sufficient to meet such emergency; . . . Provided, however, That if at any annual or special meeting of said board, it shall be found indispensably necessary to provide for the construction of a school building . . . ., then, in that event, such board may authorize such trustee to issue township warrants or bonds to pay for such building, . . . and to be sold for not less than par. . . . In no event shall a debt of the town-

ship be created except by the advisory board of such township, and in the manner herein specified."

In our opinion it sufficiently appears from the complaint that the decision of the township advisory board and the township trustee to build a schoolhouse costing the township many thousands of dollars was the moving cause for declaring an emergency for the employment of an attorney to advise the township officers concerning the procedure to be followed in order to legally accomplish their intended purpose. Hence, the contract with appellant was limited to a designated subject matter— the construction of the proposed schoolhouse.

It would seem from appellant's insistence that the advisory board's authority to the trustee to enter into the contract here in question was not in strict conformity to the language of the statute, and for that reason the contract was void. If we understand appellant it would have us hold that a debt of the township by means of a written contract can be created only by the actual manual signing of the contract by the members of the board and by copying it in the record of the board's proceedings. We cannot agree to this limited construction of the statute. While this statute may be remedial, yet it should receive a liberal construction (State ex rel. v. Parish (1913) 180 Ind. 63, 99 N. E. 977) consistent with the importance of the undertaking, or where it would tend to promote public welfare, when such construction will not contravene its positive mandate. This statute, §12068, supra, as we are at present advised, was not intended to be used as an entrapment, but as a double protection to the public in the expenditure of public revenues. A person to be eligible for election to the office of township trustee or as a member of the township advisory board is not required to be learned in the law. The duties and powers of these township officers are circumscribed by

statute, the effect of which, in many instances, should be submitted to a skillful lawyer, but as we are at present advised, the legislature has not expressed itself on that subject. Hence, by common consent, the employment of a lawyer to advise township officers generally is recognized as a necessity and his compensation a proper charge or debt of the township.

In the instant case, from the inception of the proposed enterprise, and continuing throughout the several stages of its construction, it was important that the express requirements of the statute be followed, not alone to protect the township treasury from pillage, but to prevent the township from repudiating a debt, in good faith contracted, through some inconsequential technicality. Such was the object of appellee's employment. The services of an attorney, specially employed to direct township officers concerning their duties, as here, like that of an architect, must necessarily involve certain important preliminaries before funds can be obtained to meet an appropriation to pay for such services. It therefore may be very properly said that the services of appellee should be regarded as an item in the completion of the project, and the debt thus incurred should be charged as a part of the costs of the building and payable out of the appropriation therefor. Grant that the debts of a township are created by the township advisory board, still it will not do to say that the board cannot authorize the township trustee to bind the township to pay a debt contracted by its authority when there is no provision in the statute expressly requiring the members of the board to actually evidence such indebtedness by their personally signed contract, nor that the contract shall be in any particular form, nor that such contract shall be spread of record as a part of the minutes of the board meeting.

In the instant case the board authorized the trustee

to make the alleged employment. The trustee acted. Therefore, as said in *Cress, Trustee* v. *State ex rel.* (1926), 198 Ind. 323, 152 N. E. 822, "An act once done or a contract entered into, whether by an individual or by a municipal corporation on behalf of the public, cannot be undone or nullified unless the power to undo it has been reserved." This same principle is reaffirmed in *State* v. *Feigel* (1933), ante 438, 178 N. E. 435, 436. True, §12062, Burns 1926, makes it the duty of the secretary of the board to "record the proceedings thereof at any meeting, in full, under the direction of the board, which shall be signed before the board adjourns." This language merely calls for the recording of the various actions or things done by the board at such meeting. The recording of the fact that the board empowered the trustee to make the alleged employment is all that the statute demands.

The instant question, as a matter of pleading, is answered by the allegations of authority by the advisory board to the trustee to employ appellee, and a memorandum of such action spread upon its record. In *Lincoln School Township* v. *Union Trust Company* (1905), 36 Ind. App. 113, 73 N. E. 623, it is said: "The averment that the loan, to secure which the notes in suit were given, was 'authorized' by the advisory board is, as a matter of pleading, sufficient to justify the making of a contract by the trustee. Such averment conveys notice to the defendant of the claim made, and, when traversed, requires proof by the plaintiff of each step essential to a valid authorization." It is not claimed by either party that the debt in the instant case was made to meet an existing emergency for the expenditure of a sum not included in the existing estimates and levy in the conduct of the ordinary township business. The emergency here relied on is the building of a schoolhouse, a matter wherein the board acts with

the trustee in an advisory capacity, but without power to defeat the trustee's purpose. *Advisory Board, etc.* v. *State ex rel.* (1904), 164 Ind. 295, 302, 73 N. E. 700; *Cress, Trustee* v. *State ex rel.*, supra. The demurrer in this case was not well taken.

Appellant, for a new trial, insists that the verdict is unsupported by the evidence and that it is contrary to law. Preliminary to our noticing the points made by appellant in support of this motion, we may say that public agitation for a new schoolhouse or remodelling and adding to the then existing one at Lakeville began to take form even prior to the year 1920. In 1920 the trustee had plans and specifications prepared but no decided steps were taken for making the improvement until February 1, 1921, when a meeting of the township advisory board was had. This meeting and all others thereafter held involving the subject matter of the new school building were special meetings regularly and legally called by the township trustee stating definitely the time, place, and business to be transacted. At each of these meetings all of the members of the advisory board and the township trustee were present. The proceedings of each meeting were recorded in a book known as the records of the advisory board signed by each member of the board and attested by the trustee before the meeting adjourned. The record of the proceedings of certain meetings of the board disclosed interlineations, the authenticity of which was questioned as well as the fact as to the amount of compensation appellee was to receive for his services. These questions were fully presented to the jury and by its verdict they were answered in favor of appellee. The jury in these particulars is sustained by the evidence.

Appellant, on the evidence, insists (1) that the advisory board did not create the debt; (2) that the contract was not submitted to the board; (3) that the

board was without knowledge of its terms; (4) that the board did not authorize the terms of the contract; (5) that there was no evidence of an appropriation to pay the debt created by the alleged contract; (6) that the contract was not spread of record as a part of the proceedings of the board; (7) that appellee recovered for services performed prior to the making of the contract and before money had been appropriated to pay for the same. Therefore, the contract was void as to such services and to that extent an illegal consideration inseparable from that which is legal, rendering the contract void in toto.

We cannot approve any one of the foregoing contentions. They rest entirely upon the statutory provisions considered by us in passing on the demurrer to the complaint. Further discussion of the legal principles decisive of the rights of the parties to this appeal is unnecessary. We will, however, notice the proceedings of the advisory board as they appear from the recorded minutes. The board, at its February meeting, by resolution, determined "that an emergency exists in the housing condition of the high school of Union Township. And the board finds the remodelling and building an addition to the present building is indispensably necessary." Plans and specifications theretofore prepared by named architects were adopted, and these architects employed to superintend the construction. "Upon motion duly made and seconded, the trustee was authorized to employ Arthur Moon as Attorney for the Township and the attorney was instructed to cause to be published . . . . proper legal notices to contractors . . . bids to be in" March 5, 1921. On March 5, 1921, the advisory board, the trustee, architect and attorney met at the Town of Lakeville, opened the bids for the various classes of work, and awarded contracts totaling $47,450. The minutes of this meeting further show: "And the

board estimates that in addition to the above sums it will require the additional sums of $2400.00 for architects fees, $1650.00 for attorney fees, and $3,000.00 for furnishings and miscellaneous costs. And such sums are appropriated to the use of the trustee for the purposes aforesaid." The meeting then adjourned until 7 o'clock March 12, 1921. Prior to the time thus fixed for the adjourned meeting, the trustee gave notice to each member of the advisory board of the meeting to be held March 12, 1921, at which meeting, held pursuant to adjournment and notice, the minutes thereof disclose that the trustee called to the attention of the board the matter of contract for remodelling the Lakeville school building, the financial condition of the township and the available funds in the special school fund, and whether or not an emergency existed for the issuance of bonds of the township, whereupon the "board being advised in the premises finds that it is indispensably necessary to provide for the construction of the addition to and remodelling of the Lakeville School Building and finds that the cost of the necessity in the sum of $55,000 exists, and will be in excess of any sum or sums available therefor out of the funds of the annual levy, whereupon the following resolution was adopted: Whereas, an emergency exists in the special school fund of the township, and there is needed $55,000 to meet the emergency which exists. Be it Resolved that the township trustee is hereby authorized and directed to issue and sell bonds of the school township in the sum of $55,000 to obtain funds for the purpose of paying the costs of constructing and remodelling and building an addition to the Lakeville School Building and paying expenses incidental thereto." This resolution was unanimously adopted. The advisory board then advised the trustee to direct the attorney, Arthur Moon, to take steps in the sale of bonds "to provide funds necessary

to complete the contract for the building." The trustee then reported that contractors whose bids had been approved had not yet entered into contracts, "whereupon the board by unanimous consent advised the trustee to proceed and close up the contracts at once." The board then adjourned to meet March 26, 1921, at 7 o'clock P. M.

The contract which is the basis of this action, and, under the evidence was performed by appellee on his part, was introduced in evidence. It was dated March 5, 1921, but not actually signed by appellant and appellee until May thereafter, and contained a stipulation whereby the township was to pay appellee for his services "a sum of money equal to three per cent of the total amount of the bonds issued to pay the costs of constructing said building and all other expenses connected therewith." The township issued and sold bonds to the amount of $55,000. Contracts for the construction of the building were let, the building completed and accepted by the township. During the progress of the work appellee was paid $1,200, leaving a balance due on the contract of $450. There is some evidence in this case indicating that part of the money appropriated for the payment of the fees of the architects and for the services of appellee according to his contract were diverted to other uses. However this may be, appellee's rights are not affected thereby and we will give it no further attention.

Evidence was admitted tending to show that the market price for municipal bonds on June 4, 1921, the day on which the bonds in this case were sold, and for some months prior thereto, was below par, but, at the suggestion of appellee, the contractors for the work contributed $1,100 for the benefit of the purchaser of the authorized $55,000 bond issue, thereby inducing a par bid and interest to date of delivery and a

premium of $75.50. On this evidence it is insisted, and the court was requested by appellant to instruct the jury to the effect that appellee's activities in the sale of the bonds were unlawful and a defense to his claim. The bond sale was duly advertised, bids received, sale had and sale approved by the board and trustee, in all respects according to law. There is no evidence of any collusion, conspiracy or fraud on the part of any one connected with this sale. Our attention has not been called to any statute or principle of law, and we know of none, making it unlawful for contractors to submit bids for and buy bonds, as here, issued to provide funds for the payment of the work for which they have contracted. The procedure adopted in the present case in principle is not different from that where a direct purchase by a contractor is made. The mere fact that appellee advised and expressed an opinion approving the method by which the bonds were sold certainly would not justify a charge of malfeasance against him or affect the validity of the bonds. The most that can be said on the circumstances disclosed by the evidence is, that through the activities of the contractors the bonds were sold for more than the market price and above par.

Appellant tendered fourteen instructions. The court refused the first thirteen. By the instructions refused appellant sought to have the court declare the law in accordance with its contentions in this opinion above noted. The tendered instructions submitted the same question which we have in this opinion considered and decided against appellant's insistence, and no good purpose will be subserved by a further discussion of them.

Appellant complains of instructions Nos. 7, 8, and 9 given to the jury by the court on its own motion. There may be a slight excuse for us to notice No. 9, which is asserted to be hopelessly confusing. This insistence is predicated upon two state-

527

ments in the instruction claimed to be contradictory. Both pertain to the making of the contract in suit. The instruction begins with, "If you find . . . that the defendant school township executed the written contract in question at a special meeting of the advisory board, . . . the township trustee entered into a written contract and duly executed same for and on behalf of the defendant township, . . . I then instruct you that the plaintiff is entitled to recover. . . ." When this instruction is considered in connection with the uncontradicted evidence with reference to the board's authority to the trustee to make the contract with appellee, and the trustee acted pursuant to that authority, in our opinion no one of ordinary intelligence would be confused as to the meaning of this instruction.

We have read carefully all of the instructions given by the court to the jury in this case, from which we conclude that the jury was not misled as to the law relative to the issues and the evidence submitted to it.

This case seems to have been fairly tried and the verdict well within the law and the evidence.

Judgment affirmed.