MOORE *v.* CITY OF KOKOMO

[No. 28,075. Filed April 18, 1945.]

294

*Baker & Daniels* and *G. R. Redding*, of Indianapolis, and *John E. Fell*, of Kokomo, for appellant.

*John Marshall*, of Kokomo, for appellee.

YOUNG, J.—Appellant sued appellee to collect a balance alleged to be owing him under a written contract for engineering services performed in connection with the construction of a swimming pool, in the establishment of which the City of Kokomo and the Federal Works Progress Administration were co-operating. In May, 1936 the Common Council of the City of Kokomo duly appropriated $26,000 for the city's part of the undertaking. The first commitment against this appropriation occurred when the contract sued on was entered into between the Kokomo Board of Public Works and Safety and Russell B. Moore Company, Inc., to whose rights the appellant succeeded when the corporation bearing his name was dissolved. In 1937, while the work of constructing the swimming pool was in progress, an additional appropriation of $10,000 for the project was regularly made by the City Council. Construction of the swimming pool was not completed until the summer of 1938.

The contract between the City of Kokomo and Russell B. Moore Company, Inc., whom, with appellant, we will call engineer, required the engineer to prepare plans and specifications and an application to the Works Progress Administration for aid in the project, for which the

engineer was to be paid 4% of the estimated cost of construction, payment to be made upon delivery thereof.

The engineer agreed to assist the City and the Works Progress Administration in obtaining bids on material and equipment, by furnishing complete lists of material and equipment and preparing proper specifications for same. He also undertook to stake out the work, and furnish lines and levels in accordance with the plans and specifications and make photographs and keep records of the construction, such photographs and records to be delivered to the City. He was to be responsible for the inspection of both materials and workmanship. For these services he was to be paid 2% of the cost of the work completed each calendar month.

It was agreed that there should be employed throughout the construction of the work a full time resident inspector, to be employed by the engineer. For the services of this resident inspector the City agreed to pay the engineer $250.00 per month.

The engineer prepared the plans and specifications for the swimming pool and delivered same to the City of Kokomo early in September, 1936. He inspected the materials and equipment purchased for the job, prepared material lists and advertisements and advised with the Board of Public Works and Safety with respect to purchases. During the early part of the construction a resident inspector was employed and laid out the work and made photographs and reports and delivered them to the City. At the end of five or six months the employment of the resident inspector was discontinued at the request of the City to save the amount of his salary.

On or about April 30, 1942, the appellant filed with the Board of Public Works and Safety his itemized and verified claim wherein he charged the City with 6% of $163,392.00, which was the total cost of the swim-

ming pool, to which was added $983.29 for inspection and supervision during the time the resident inspector was employed. Credits for payments on account in the sum of $5,760.15 were deducted and the balance owing was shown to be $5,020.66. Payment was refused and this action was instituted by the engineer against the City, resulting in judgment for the defendant.

The City contends that the contract sued on was null and void because: (1) there was no appropriation for engineering services when the contract was made; (2) the contract required approval by the City Council, and (3) there was no record of the Board of Public Works and Safety showing action by the Board, as such, authorizing the contract.

The claim that there was no appropriation for engineering services is based upon § 48-1406, Burns' 1933, which provides that, "No appropriation shall be made for the payment of money otherwise than by ordinance, specifying by items the amount thereof and the department for which the appropriation is made." The first appropriation ordinance involved in this case was adopted by the common council of the City of Kokomo on May 7, 1936, and consisted of three items. The first was a sum of money for improving certain streets and sewers in the City of Kokomo; the second was the sum of $26,000.00 "for the purpose of paying the City's portion of the cost of the Municipal swimming pool, the balance of the cost of said improvement to be furnished by the Works Progress Administration," and the third item was a small sum of money to the City Clerk for incidental bond and publishing expense. Here is an ordinance itemizing three sums of money appropriated for three different purposes. We have been referred to no case, and have found none, which indicates that an appropriation for

a public improvement shall break down the cost of such improvement into detailed items going to make up the whole.

In the cases of *Union School Township* v. *Moon* (1933), 205 Ind. 514, 520, 187 N. E. 332, and *Barringer* v. *Guilford School Township* (1935), 100 Ind. App. 445, 457, 194 N. E. 651, it has been held that professional services required by a governmental unit is included in and may be paid out of the appropriation providing funds for the project in connection with which the services were required. Appellee argues that these are township cases relating to the construction of school houses and that different law applies. It is true that the machinery set up for townships and the machinery set up for cities in the matter of improvements are different, but if it may be said that architect and engineering fees are a part of the cost of a school building built by a township we see no reason why the same rule may not apply to engineering fees as a part of the cost of the construction of a swimming pool built by a city. We therefore hold that compensation for engineering services is a part of the cost of a municipal swimming pool and may be paid from an appropriation made for the purpose of paying the costs of such pool.

In support of its claim that the contract sued on was void, because it was not authorized or approved by the city council, appellee contends that where a city has a regular city engineer only the city council can contract for additional engineering service. No authority to this effect has been cited. This court has held that in the absence of statutory restrictions a city possesses the inherent power to employ assistance in its legal department when the gravity of litigation reasonably requires such assistance and that such em-

ployment rests in the sound discretion of the proper officials of the municipality. *South'n Ind. Gas & Elec. Co.* v *City of Boonville* (1937), 213 Ind. 307, 309, 12 N. E. (2d) 122, 12 N. E. (2d) 503. We see no distinction for present purposes between legal assistance and engineering assistance. In the matter before us the statute granted to Board of Works and Safety the power to contract for the swimming pool. They were the officials in whose discretion the employment of engineering service for that project was vested.

In this connection appellee also refers to § 48-1902, Burns' 1933, clause First, which gives the Board of Works and Safety the power to condemn, rent or purchase real estate or personal property needed for any public use and provides that "when a sum of more than two thousand dollars is required to be paid for condemnation, rent or purchase of any real estate or personal property, the same shall not take place unless the condemnation, rent or purchase is specifically authorized by ordinance." In its brief appellee says that it believes this clause broad enough to include the contract before us. We cannot agree. Contracting for engineering services in connection with the construction of a municipal swimming pool is far different from condemning, renting or purchasing property needed by a city for public use.

By clause Third of the same section the right of the Board of Works and Safety to contract for improvements of any property belonging to or used by the city is specifically given, without proviso for council action. The swimming pool here involved falls within clause Third and not within clause First of this section of the statute, and authority by ordinance from the city council is not necessary.

There is also some intimation in the record of this case, but no direct showing, that the Board of Public Works and Safety did not act regularly and that no record of the execution of the contract sued upon or the authority to make same was ever made.

The record does show affirmatively, however, the stipulation between the parties which was introduced in evidence, and in this stipulation it was agreed that the parties entered into the contract sued on. Such a stipulation that a contract has been entered into implies that it was properly entered into. *City of Logansport* v. *Dykeman* (1888), 116 Ind. 15, 18, 17 N. E. 587; *Board of Commissioners* v. *Mitchell* (1892), 131 Ind. 370, 371, 30 N. E. 409; *Falender* v. *Atkins* (1917), 186 Ind. 455, 457, 114 N. E. 965.

In its fifth paragraph of answer appellee alleges partial failure of consideration and points to defects in the swimming pool as the basis for its claim. The evidence shows without contradiction that no contractor was employed to execute the plans and specifications prepared by appellant. The City did the work through its Board of Public Works and Safety, using labor and material furnished by itself and the Federal Works Progress Administration. Therefore the faulty work was done by the City itself, and the evidence was limited to descriptions of the defects, and there was no evidence that any defect was due to any failure of any kind upon the part of the engineer, except as it might be inferred that the engineers were lax in inspection.

In only one instance was faulty design claimed. That instance has to do with port-holes in an observation chamber below water level. The port-holes were designed to permit guards to watch the floor of the pool to discover persons in trouble. There were 16 of

these port-holes and each was built in the shape of a sawed-off cone, with the large opening on the inside and the small end sealed with glass on the outside. It was urged that this was not proper construction. Appellee contended that the smaller end of the cone should be on the inside and the larger end on the outside. The port-holes, however, were constructed by the appellee in accordance with detailed plans prepared by the engineers and accepted and adopted by appellee. Having accepted the plans and installed the port-holes in accordance therewith, appellee is not now in a position to repudiate its obligation to the engineers on this account.

All of the other defects in the construction of the pool, claimed by appellee, resulted from failure to follow plans and specifications and this failure was appellee's failure, because it undertook the construction of the pool without employing a contractor. It appears affirmatively that the departures from plans and specifications causing some of the trouble were deliberate on the part of the appellee and for the purpose of saving construction cost. It may be contended with some reason that these departures from plans and specifications would have been discovered by proper inspection. The contract called for a full time resident engineer-inspector. This inspector was to be employed by appellant but appellant was to be reimbursed for the amount of his salary, and it was the uncontradicted evidence that after a few months the services of this full time inspector was dispensed with at the request of the City and for the sole purpose of saving the amount of his salary. The City, having dispensed with this inspection, cannot complain of defects for which it, through its employees, was responsible, which inspection might have prevented. The modification in the contract doing away with the full time

inspector served to relieve the engineer of this responsibility.

Appellant's claim, as filed and sued on, is based upon a charge of 4% of actual construction cost for preparing plans and specifications. No point has been made of this. It will be observed, however, that the contract limits this 4% to the *estimated* cost of construction. This should be kept in mind upon a new trial.

*Reversed with instructions to sustain plaintiff's motion for a new trial.*

NOTE.—Reported in 60 N. E. (2d) 530.