## THE AETNA LIFE INSURANCE COMPANY *v.* WEATHERHOGG ET AL.

[No. 14,676. Filed November 23, 1936. Rehearing denied June 16, 1937.]

*Otto E. Grant,* for appellant.

*Willard Shambaugh, Guy Colerick,* and *James P. Murphy,* for appellees.

LAYMON, J.—Appellant's action, pleaded in thirteen distinct paragraphs of complaint, seeks to impose personal liability upon appellees for appellant's debt for liability insurance sold and furnished, on the theory, first, that appellees were a partnership doing business under the name of the Fort Wayne Transfer and Yellow Cab Company; second, that appellees were doing business under the name of Fort Wayne Transfer and Yellow Cab Company pretending to be a corporation, and appellees pretending to be stockholders and members of said pretended corporation, when no such corporation had been organized and no steps had been taken to organize the same; third, that the appellees were doing business under the name of Fort Wayne Transfer and Yellow Cab Company and were pretending to be a corporation, and that they were pretending to be directors of said pretended corporation, and that they had become personally liable because they had not complied with the law with reference to the organization of said corporation and changing the name thereof. The appellees filed five paragraphs of answer, and appellant filed its demurrer to the fourth and fifth paragraphs, which demurrer was overruled, and the issues were closed by a reply filed by appellant to the appellees' answers. There was a trial by the court and judgment for the defendants. The appellant has assigned as error the overruling of the appellant's demurrer to the fourth and fifth paragraphs of appellees' answer and the overruling of appellant's motion for a new trial, which motion recites that the finding of the court is not sustained by sufficient evidence and is contrary to law and that error was committed in the admission and rejection of certain evidence.

The appellant contends that, so far as the first paragraph of complaint is concerned, the issue was made by said paragraph of complaint and an "unverified" general denial thereto; that appellant was entitled to a finding upon the undisputed proof that insurance was furnished by appellant to appellees at their instance and request under a pleading that averred that said defendants were a partnership, with no other answer thereto but an "unverified" general denial; that appellant was entitled to such a finding as a matter of law, citing section 2-1034 Burns 1933 (§138 Baldwin's 1934) which provides that the character or capacity in which a party sues or is sued, shall require no proof on the trial of the cause unless such character, capacity or authority be denied by pleading under oath. Upon examination of appellant's first paragraph of complaint it will be observed that the appellees were sued in their individual capacity and not under the name and style of a partnership, and therefore this section of the statute is not applicable.

The appellant further contends that appellees were doing business under the name of Fort Wayne Transfer and Yellow Cab Company, pretending to be a corporation, and appellees pretending to be stockholders, members and directors of said pretended corporation, when no such corporation had been organized and no steps had been taken to organize the same and they had not complied with the law with reference to the organizing and changing of the name of said corporation, and that by reason thereof said appellees became personally liable. It is conceded by appellant that the appellees in the incorporation of the Fort Wayne Transfer Company complied with all of the statutory requirements of the Voluntary Association Act of 1901, at page 289, but failed to file a duplicate of the articles in the recorder's office of the county in which the prin-

cipal place of business of such association was located, as by said Act provided. The appellees assert that the debt sued upon by appellant herein was incurred by the Fort Wayne Transfer Company and that said company was incorporated under the Voluntary Association Act of 1901 and that all of its provisions have been complied with except the filing of a duplicate of the articles of incorporation in the recorder's office of the county in which the principal place of business of such association was located, and that since its incorporation, on the 10th day of November, 1911, said corporation has exercised its corporate powers and that the Fort Wayne Transfer Company was a *de facto* corporation at the time the applications and liability insurance policies were executed. Therefore, did the failure of the appellees to file and record the articles of incorporation in the recorder's office prevent the Fort Wayne Transfer Company from being a corporation *de facto* at the time in question?

In the case of *Doty et al.* v. *Patterson et al.* (1900), 155 Ind. 60, 64, 56 N. E. 668, the court said: "It is settled in this State that, when there is a statute authorizing the creation of a corporation, an attempt to comply with the statute, and an actual exercise of corporate functions, although some formalities required by law have been omitted, there is at least a corporation *de facto,* the legal existence of which can only be questioned in a direct proceeding brought by the proper party for that purpose. . . .

"While, under the facts alleged in the complaint, the 'Fortville Butter & Cheese Factory' was not a corporation *de jure,* they do not show that it was not a corporation *de facto,* but, on the contrary, it appears that an attempt was made to create a corporation under and in compliance with a law authorizing the creation of a corporation of its class and powers, and an actual exercise of corporate functions. Under the settled law of

this State, therefore, the 'Fortville Butter & Cheese Factory' was a *de facto* corporation, and its corporate existence cannot be questioned by appellees in this proceeding. This rule is not limited to cases where one by contract admits corporate existence, but is a rule of general application. . . . The rule established by the great weight of authority is that the stockholders in a *de facto* corporation cannot be held liable as partners, although there have been irregularities, omissions, and mistakes in incorporating the company. Clark on Corp. pp. 99-110," and cases cited.

In the case of *Inter-Ocean Newspaper Company* v. *Robertson*, decided by the Supreme Court of Illinois in (1921), 296 Ill. 92, 94, 129 N. E. 523, the court said: "The first question to determine is whether the Chicago Real Estate Show Company was a corporation *de facto*. The essential conditions for the existence of a *de facto* corporation are a valid law under which it may be organized, an attempt in good faith to organize under that law, a colorable or apparent compliance with the law, and user of the corporate powers. Under decisions in this state and other jurisdictions, some of which we cite, the Chicago Real Estate Show Company was a corporation *de facto*, notwithstanding it neglected to file its final certificate of complete organization for record. Whether members and stockholders of a *de facto* corporation, as distinguished from a *de jure* corporation, are protected from liability to creditors as partners, the decisions are not in entire accord, but the great weight of the authorities hold they are not liable, in the absence of a statute making them so liable. That the stockholders of a *de facto* corporation, where the members in good faith supposed they were legally incorporated under a valid law authorizing such incorporation and honestly transacted business as a corporation, should not, in the absence of a positive statutory mandate, be treated and considered

as partners as to persons dealing with it as a corporation seems to be absolutely sound. . . . Cook, in his work on Corporations (vol. 1, 5th Ed.) section 234, says that the great weight of authority has established clearly that the stockholders of a *de facto* corporation cannot be held liable as partners even though there have been irregularities, omissions, or mistakes in incorporating. The author expresses the view that this is reasonable and just; that parties who dealt with the company as a corporation should not be allowed to claim more than they originally bargained for, and hold the stockholders personally. He says the rule is established beyond reasonable doubt. In our opinion a contrary rule would be far-reaching in its consequences, and often lead to great injustice and hardship to innocent stockholders. It is by no means always practicable for purchasers of stock to examine every step taken in the organization of the corporation, and to hold them individually liable for its debts seems contrary to reason and justice, where there had been no fraud, but an honest effort had been made to effect a legal organization, and both the incorporators and stockholders in good faith believed the corporation legal, but some mistake or omission had been made such as here—neglect to file the final certificate of its complete organization for record."

It is insisted by appellant that the contrary doctrine was declared by the Circuit Court of Appeals, Eighth Circuit, in *Harrill* v. *Davis et al.* (1909), 94 U. S. 47, 168 Fed. 187. In that case Judge Sanborn said (p. 50): "The patent and indisputable facts in this case are that the four defendants associated themselves together, and from June, 1902, until December 22, 1902, actively engaged in purchasing lumber, material, and labor of the plaintiff, and in constructing a cotton gin under the name 'The Coweta Gin Company,' and in

conducting the business of buying, selling, and ginning cotton for profit under the name 'The Coweta Cotton & Milling Company,' and that during this time they incurred more than $4,700 of the indebtedness of $5,-145.48 for which this action was brought. On December 22, 1902, they made their first real attempt to incorporate, and for the first time took on the color or appearance of a corporation. On that day they filed articles of incorporation with the clerk of the Court of Appeals, but they never filed any duplicate of them with the clerk of the judical district in which their place of business was located, as required by the statutes in order to constitute them a legal corporation and to authorize them to do business as such. . . . Counsel for the defendants argue with much force and persuasiveness that they escape liability because they became a corporation *de facto,* although they concede that they never became a corporation *de jure,* and in support of this position they cite, among other cases [a number of authorities, including the case of *Doty* v. *Patterson,* 155 Ind. 60]. But in every one of these authorities articles of incorporation had been filed under a general enabling act, or a charter had been issued and there had been a user of the franchise of the supposed corporation which had been colorably created by the filing of the articles or the issue of the charter before the indebtedness in question was created, while nothing of this nature had been done before the debt for the $4,700 which we are now considering was incurred. The authorities which have been recited rest upon the proposition that where parties procure a charter or file articles of association under a general law, thereby secure the color of a legal incorporation, believe that they are a corporation, and use the supposed franchise of the corporation in good faith, and third parties deal with them as a corporation, they become a corporation

*de facto* and exempt from individual liability to such third parties, although there are unknown defects in the proceedings for their incorporation." And it was held in this case that the defendants could not escape individual liability for the $4,700 on the ground that "The Coweta Cotton & Milling Company" was a corporation *de facto* when that portion of the plaintiff's claim was incurred, because it then had no color of incorporation and they knew it and yet actively used its name to incur the obligation. The court further held that the defendants never became a corporation *de facto* prior to December 22, 1902, that they never became a corporation *de jure,* and that the trial court below should have instructed the jury that the defendants were individually liable for that portion of the plaintiff's claim which was incurred prior to December 22, 1902. Its failure to do so was a fatal error which necessitated a reversal of the judgments below. And the court did not pass upon the status of the defendants subsequent to December 22, 1902. Quoting further (p. 57) : "It is sufficient to say regarding the portion of the plaintiff's claim incurred subsequent to December 22, 1902, that while there is a conflict of authority upon the question whether or not incorporators or stockholders remain personally liable after the filing of articles in one office only where the statute requires them to be filed in two offices as a condition of incorporation or of the commencement of business, the statute under which this case arose was brought into the Indian Territory from the state of Arkansas, and the Supreme Court of that state had held, before it was adopted in the Indian Territory, that such corporators or stockholders remain individually liable under this statute unless and until their articles of incorporation are filed in both offices."

The doctrine that members of a corporation *de facto* are protected from liability as partners seems to be

generally adopted in more recent cases, and the weight of authority is in favor of protecting the corporators from individual liability if there is a *de facto* corporation. The contrary doctrine appears in a few cases, one of which is the case of *Garnett* v. *Richardson* (1879), 35 Ark. 144.

In discussing the subject of the failure to comply with particular statutory requirements, the author of Corporations in 7 Ruling Case Law section 45, at page 64, says: "There are decisions, however, which in effect affirm that in the absence of any filing of the articles of incorporation there is neither a charter nor a colorable attempt to obtain one and therefore that the persons acting as a corporation are necessarily a mere association or partnership. However the better view seems to be that the failure to file the articles of incorporation, though indispensable to the creation of a corporation *de jure,* is not conclusive against the existence of a corporation *de facto.*"

In the case of *Huntington Manufacturing Company* v. *Schofield,* 28 Ind. App. 95, 62 N. E. 106, it appears that the articles of association were signed and acknowledged as the statute required and properly filed in the office of the secretary of state and instead of filing the articles of association in the county recorder's office, the certificate of incorporation issued by the secretary of state was filed and recorded in the recorder's office. The appellant in the case contended there was no corporation because of the failure to file the articles in the county recorder's office, and the court disposed of this contention with the following language. 'Where there has been a good faith effort to organize a corporation under a statute authorizing such incorporation, and corporate functions have been assumed and exercised, the organization becomes a *de facto* corporation'."

In *Williamson* v. *The Kokomo Building and Loan*

*Fund Association* (1883), 89 Ind. 389, it appears that articles of association, signed and acknowledged as the law requires, were filed in the proper recorder's office, but instead of filing a duplicate in the office of the secretary of state as the statute provides, a certified copy was there filed. The contention of appellant was that as the association filed a certified copy and not a duplicate of its articles of association in the office of the secretary of state, it never became a corporation and the mortgage executed to it was void, and the court said (p. 390) : "Where persons assume to incorporate under the laws of the State, and in part comply with their requirements, assume corporate functions and transact business as a corporation, private persons can not collaterally question the right of such an association to a corporate existence, although there has not been a full compliance with the provisions of the statute. *Baker* v. *Neff*, 73 Ind. 68. This rule is not limited to cases where one by contract admits corporate existence, but is a rule of general application."

Therefore, we conclude that the failure to file a duplicate of its articles in the recorder's office of the county in which the principal place of business of such association is located did not prevent the Fort Wayne Transfer Company from being a *de facto* corporation.

Answering appellant's further contention that appellees are personally liable for using the name Fort Wayne Transfer and Yellow Cab Company without taking any steps required by the statute to change the name of the corporation, the evidence discloses that some time before appellant's debt was created, the members of the Fort Wayne Transfer Company acquired the exclusive license to use yellow cabs in their business in Fort Wayne, Indiana, and added the words "Yellow Cab" to the corporate name Fort Wayne Transfer Company. The Fort Wayne Transfer Com-

pany continued in existence after its articles of incorporation were issued on the 10th day of November, 1911, with the same stockholders, officers, and agents and carried on the same business as before but under an unauthorized name. The evidence further discloses that at the time the appellant's debt was created appellant was furnishing liability insurance to and was dealing with the Fort Wayne Transfer and Yellow Cab Company *as a corporation*. The debt sued upon by appellant is for premiums of liability insurance furnished by appellant to the Fort Wayne Transfer and Yellow Cab Company as an Indiana corporation. It will be noted that if there had been an actual change of name in conformity with the law, it would not have affected in any manner the identity of the corporation or added to or detracted from its rights or obligations.

In the case of *Pilsen Brewing Co.* v. *Wallace* (1920), 291 Ill. 59, 125 N. E. 714, it appears that the name of the corporation the Farmers' Grain & Feed Company was not changed, but its business was continued by the same officers under the new name "Chicago Grains & Feed Company" on the assumption that a change had been made. The court said (p. 62): "There may be circumstances perhaps justifying a conclusion that a change of name amounts to a destruction of the corporation," citing the case of *Cincinnati Cooperage Co.* v. *Bate* (1894), 96 Ky. 356, in which it was held that an unauthorized change of name under the circumstances of that case was an abandonment not only of the corporate name, but of the corporation itself, and that an attempted substitution of a new name made the members of the corporation liable as partners under contracts entered into in the substituted name. The court said (p. 63): "That case was so different in its facts as to have no legitimate bearing on this case, in which there was an abortive attempt to change the name of the corporation as authorized by the statute.

The law was complied with so far as the resolution of the stockholders was concerned, and the only failure to complete the change was in not having the change filed in the office of the Secretary of State and recorded in the recorder's office. For that failure the name was not, in fact, changed, and the original corporation continued without any change of name and carried on business as before, under an unauthorized name." The court held (p. 64) : "The Farmers' Grain & Feed Company continued in existence with the same stockholders, officers, and agents and carried on the same business as before, but under an unauthorized name. It was not relieved from liability on the contracts made in the name of the Chicago Grains & Feed Company, and, that being so, the defendant [Wallace, as president] was not liable."

The evidence discloses in the instant case that the stockholders, officers, and agents and the business of both the Fort Wayne Transfer Company and the Fort Wayne Transfer and Yellow Cab Company were the same and that the officers, directors, and members of the Fort Wayne Transfer Company continued in the same business of the Fort Wayne Transfer Company after it had added the words "Yellow Cab" to its corporate name, and at the time of incurring the debt of appellant sued on herein, the appellees were carrying on the same business which they had formerly carried on under the corporate name of Fort Wayne Transfer Company, and, therefore, the evidence was such that the trial court was justified in concluding there was not such an unauthorized change of name in this case as would incur liability upon the members of the corporation as partners.

We feel it unnecessary to set out all of the facts pleaded in appellees' fourth and fifth paragraphs of answer to the appellant's second to thirteenth paragraphs of complaint for the reason that said paragraphs

are in substance similar and that they each substantially disclose that the Fort Wayne Transfer Company was a corporation *de facto* and that by using the words "Yellow Cab" in connection with the corporate name Fort Wayne Transfer Company the identity of the Fort Wayne Transfer Company as a corporation was not changed; that in truth and in fact the debt of appellant was that of the Fort Wayne Transfer Company. Therefore, the trial court committed no error in overruling appellant's demurrer to each of said paragraphs of answer.

Appellant assigns as error the admission in evidence of certain proceedings in the receivership of the Fort Wayne Transfer Company upon the theory that said proceedings were immaterial and irrelevent and self-serving. The evidence discloses that Lennart and Ortlieb were agents representing the appellant locally in the furnishing of the liability insurance in question and that said Lennart and Ortlieb had on former occasions taken notes for premiums from the Fort Wayne Transfer Company and had filed these notes as claims in said receivership proceeding. Therefore, the receivership proceedings were not immaterial and self-serving.

The appellant points out in its brief a number of other rulings of the court in the admission and rejection of evidence, and upon our examination of them we fail to find any error of the court affecting the substantial rights of the parties. We think there is no harmful error shown, and the judgment is affirmed.

Judgment affirmed.