## Jennings v. Dark et al.

[No. 21,557.   Filed October 28, 1910.   Rehearing denied March 14, 1911.]

1. APPEAL.—*Harmless Error.—Sustaining Demurrer to Para-graphs of Complaint.—Special Findings.*—Where the special find-ings set out the facts contained in the paragraphs of complaint to which a demurrer was sustained, and such paragraphs consti-tute merely different statements of the same cause of action set forth in the paragraph to which the demurrer was overruled, the Supreme Court may look to such findings in determining whether the error committed in sustaining such demurrer was harmless.   p. 338.

2. CORPORATIONS. — *Void.—De Facto.—Partnership.—Liability of Partners.*—Members of a corporation that is wholly illegal and unauthorized are liable as partners; but members of a corpora-tion *de facto*, acting in good faith, under the belief that they con-stitute a corporation, are not liable as partners.   p. 338.

3. CORPORATIONS.—*De Facto.—Stockholders.—Complaint Against. —Conclusions.*—Allegations, in an action by a creditor of a *de facto* corporation against the stockholders thereof, that such stockholders concealed their true relation, and that they were partners, are conclusions.   p. 339.

4. CORPORATIONS.—*Special Charters.—Time of Acceptance.—Con-stitutional Law.*—A corporation could not lawfully be formed

after the adoption of the Constitution of 1851, where a special charter was granted (Local Laws 1850 p. 30) but which charter was not accepted until after the adoption of such Constitution. p. 340.

5. CORPORATIONS.—*Franchises.*—*Alienation.*—The franchise to be a corporation cannot be alienated without the express consent of the authority creating such corporation, the charter of a corporation, therefore, being the subject of neither barter nor sale. p. 340.

6. CORPORATIONS.—*De Facto.*—*Creditors.*—*Estoppel.*—Where a corporation was chartered by a special act (Local Laws 1850 p. 30), and the charter passed by assignment to the defendants, and they exercised corporate rights under the general laws governing corporations engaged in the same business, creditors thereof, who dealt with it as a corporation, are estopped to deny the corporate existence thereof. pp. 341, 342.

7. CORPORATIONS.—*Quo Warranto.*—*Parties.*—The State is the only party that can question a corporation's right to do business where a *de jure* corporation might be formed under the law. p. 342.

8. CORPORATIONS.—*De Facto.*—*Essentials.*—The essentials for the existence of a *de facto* corporation are (1) a valid law under which the corporation might have been formed, (2) a *bona fide* attempt to incorporate under such law, and (3) an actual exercise of corporate powers. p. 342.

9. CORPORATIONS. — *Void.*—*Liability of Stockholders.*—*Estoppel.*— Unless some estoppel intervenes, stock in a void corporation is also void, and there can be no recovery thereof against the alleged holders. p. 342.

10. CORPORATIONS.—*De Facto.*—*Preferred Stock.*—The holders or pledgees of preferred stock in a *de facto* corporation are preferred creditors thereof, and are not liable for the debts of the corporation. pp. 343, 344.

11. ESTOPPEL.—*Creditors of De Facto Corporation.*—Creditors dealing in good faith with a *de facto* corporation believed by the stockholders to be lawful, are estopped from asserting the invalidity of the corporation, and from charging the stockholders with the liabilities of partners. p. 343.

From Hendricks Circuit Court; *James L. Clark*, Judge.

Action by Harry E. Jennings against Charles E. Dark and others. From a judgment for defendants, plaintiff appeals. *Affirmed.*

*William J. Whinery, Edgar M. Blessing* and *Pickens, Cox & Kahn,* for appellant.

*Howe & Batchelor, Jameson & Hay* and *James P. Baker,*
for appellees.

MYERS, J.—Appellant's complaint is in four paragraphs.
The first two are grounded upon a claim of statutory liability
as stockholders in an insurance corporation, claimed to have
been organized under the act of January 14, 1850 (Local
Laws 1850 p. 30) as amended February 22, 1893 (Acts 1893
p. 133); the last two, upon a liability as copartners in an
association of persons claiming to be incorporated, wherein
actual incorporation was not effected; and hence a liability
is claimed as of a copartnership. Demurrers were sustained
to the first, third and fourth paragraphs, and overruled as
to the second, upon which a trial was had, a special finding
of facts made, conclusions of law stated, and judgment
rendered for appellees.

Errors are here urged on the ruling on the demurrers
to the first, third and fourth paragraphs of the complaint,
upon exceptions to the conclusions of law, and in overruling
the motion for a new trial.

The facts found show the enactment of the statute of
1850, *supra,* and that in 1891 defendant McGilliard, for a
valuable consideration, purchased and took an assignment
from one McCulloch, a son and heir of Hugh McCulloch,
who was one of the grantees in said charter, of whatever
interest said McCulloch might then have in said charter
as a son and heir of said Hugh McCulloch; that McGilliard
had no knowledge of any of the other parties named in said
charter, or of their heirs or assigns, and at the time no cor-
poration was in existence, or doing business under said
charter, nor had any corporation prior to that time trans-
acted any business under said charter; that McGilliard and
a number of other persons attempted to organize a corpora-
tion for the purpose of doing an insurance business under
said charter, by virtue of the authority and rights obtained
through said assignment, and established themselves as an in-
surance company, under the style of "The Indiana Insurance

Company of Fort Wayne," with general offices in Fort Wayne, Indiana, and carried on a general insurance business throughout this State and other states, issuing policies of insurance, establishing agencies, electing boards of directors, and officers, such as president, secretary and treasurer, and continued such business as a corporation under said name until February 22, 1893, when the parties in interest procured the passage of said act of 1893, changing the name to "Fort Wayne Insurance Company"; that in 1899 the Fort Wayne Insurance Company became insolvent, and a receiver was appointed by the Lake Superior Court, in which court an order was made directing the sale, by the receiver, of the assets, books and charter of said so-called corporation, under which order the receiver did sell, or attempt to sell, and said McGilliard and others purchased, or attempted to purchase, the assets, books and charter, and the sale was approved by the court, and the charter was assigned, or attempted to be assigned, to said McGilliard and others, free from any claims or liens of the creditors or stockholders of the Fort Wayne Insurance Company; that in June or July, 1901, said McGilliard, Charles E. Dark, W. W. Dark, Edward E. Dark, Wilmer Christian and David Cline attempted, by virtue of the authority and rights held by them through said purchase, to organize an insurance company under the name of the Equitable Insurance Company of Indiana, with its principal office in the city of Indianapolis, Indiana; that said McGilliard was a stockholder in said Fort Wayne Insurance Company, but none of the other persons named as the organizers of the Equitable Insurance Company held stock in the Fort Wayne Insurance Company; that McGilliard in his participation in the attempted organization of the Equitable Insurance Company did not represent, or pretend to represent, the capital stock held by him in the Fort Wayne company; that said persons at their meeting for the purpose of organizing the Equitable Insurance Company, and in their records of said meeting, denominated themselves the stockholders of

the Fort Wayne Insurance Company, and by resolution changed the name to the Equitable Insurance Company of Indiana, changed the location of the home office from Fort Wayne to Indianapolis, retained the stock at $200,000, with $100,000 only of the stock issued, and accepted, or attempted to accept, the provisions of the act of March 6, 1883 (Acts 1883 p. 135, §§4072-4078 Burns 1908), respecting corporations created and existing at and before November 1, 1851, and filed a copy of the resolution in the office of the Secretary of State, who issued a certificate of the fact; that said so-called Equitable Insurance Company of Indiana issued common stock, elected officers, and conducted a general insurance business from its general offices in the city of Indianapolis until the appointment of a receiver; that the stock certificates recited that the company was incorporated under the laws of the State as the Equitable Insurance Company of Indiana, with a capital stock of $200,000, divided into shares of $100 each, subject to the terms of the charter of the company, and were in the usual form, signed by the president, and attested by the secretary; that by an agreement of the stockholders an issue of $25,000 of preferred stock was authorized, and part of the issue sold; that these certificates recited that the company was organized under the laws of the State of Indiana, and that the shares of preferred stock—$100 each—were nonassessable and nontaxable; that the company guaranteed to redeem them in five years, and to pay semiannually a cash dividend of eight per cent per annum, on January 1 and July 1, with the right to cancel at the end of one year, or any interest-maturing date; that these certificates were signed by the president and attested by the secretary; that no record was made of the action of the stockholders authorizing the issue of the preferred stock; that defendant McGilliard was the owner of twenty-five shares and Hackedorn and Wagner each owned one share of common stock, that Charles E. Dark owned twenty-two shares, McGilliard, seven shares,

Hackedorn, ten shares, Christian, five shares, McGilliard and Charles E. Dark as partners, eight shares, W. W. Dark, one share, Jameson, five shares, Wilson, one share, Tarlton, five shares, E. R. Owen, one share, B. F. Owen, ten shares, Holman, ten shares, White, one share, Edward H. Dark, one share, W. W. Dark and Edward H. Dark as partners, one share of the preferred stock; that Wagner and Hackedorn owned their preferred stock from July 14, 1902, to July 1, 1903, Christian, Jameson, Wilson, Tarlton, E. R. Owen, B. F. Owen, White and McGilliard owned their preferred stock on April 1, 1903, and have owned it ever since; that Charles E. Dark, W. W. Dark, and Edward H. Dark surrendered their preferred stock in July, 1902, and it was canceled on the company's books; that they were paid the par value thereof; that all the common stock, except that held by Wagner and Hackedorn from July 14, 1902, to April 2, 1903, was sold, assigned and transferred on the books of the company on or before July 14, 1902; that Tarlton, Jameson, E. R. Owen, B. F. Owen, White and Wilson in noway participated in the business, management, or the meetings of directors or stockholders, but received one or two dividends on their stock; that the defendant McLain at no time held any stock in his own right, but for a time held five shares of the preferred stock of McGilliard, as collateral to a loan that had been paid, but McLain has the custody of the stock.

The facts are found as to the ownership in plaintiff of the property insured, the issuance of the policy April 4, 1903, the loss by fire May 15, 1903, and a loss to plaintiff of $500, the appointment of a receiver in the Lake Superior Court, July 15, 1903, of the assets of the Equitable Insurance Company of Indiana as an insolvent corporation; that on July 3, 1906, plaintiff filed his claim for damages in the receivership proceedings, and the claim was allowed; that there were no assets at any time in the hands of the receiver out of which the claim could be paid; that no attempt was at

any time made by the parties interested to incorporate under the general laws for the incorporation of insurance companies, other than as has been shown; that the seal was impressed as "The Equitable Insurance Company of Indiana, Chartered January 14, 1850."

Charles E. Dark died since the commencement of the suit, and W. W. Dark, as administrator of his estate, was substituted in his stead. Defendants Christian, Charles E. Dark, W. W. Dark, Edward E. Dark, McGilliard, Hackedorn, Holman and Wagner participated in the meetings of the stockholders and were elected officers, such as president, secretary, assistant secretary, and directors in the company, prior to the dates when they sold their common stock, and each received dividends upon the preferred stock held by him.

Upon these facts the court concluded that plaintiff was not entitled to recover against any defendant.

1. In determining whether the sustaining of the demurrers to the first, third and fourth paragraphs of complaint was harmful to appellant, we may look to the finding of facts, and in so doing we discover that it covers the entire subject-matter of each paragraph, which paragraphs are but a different statement of the same cause of action pleaded in the second paragraph, and hence the error, if any, was harmless. *Gilliland* v. *Jones* (1896), 144 Ind. 662, 55 Am. St. 210; *Evansville, etc., R. Co.* v. *Maddux* (1893), 134 Ind. 571; *Walling* v. *Burgess* (1890), 122 Ind. 299, 7 L. R. A. 481; *McComas* v. *Haas* (1884), 93 Ind. 276; *Olds* v. *Moderwell* (1882), 87 Ind. 582.

2. The question presented by the findings is, What relation did appellees bear to appellant? The answer to this inquiry depends upon the legal effect of the facts found, and whether they support the contention of appellant that appellees were liable to him as stockholders, or as copartners, or otherwise. The legal effect of an attempt by individuals to carry on business as an incorporated

company when there has been no legal incorporation, by which they become liable as partners, is well stated in Shumaker, Partnership (2d ed.) p. 61: "Where the corporation is wholly illegal and unauthorized by law, the stockholders are liable as partners. Members of a corporation *de facto*, acting in good faith under the belief that they constitute a corporation, are not liable as partners. Mere defects in organization, such as failure to comply with some statutory enactment, will not, by the weight of authority, render the members liable as partners." It is also said in Shumaker, Partnership (2d ed.) p. 21: "The intention of the parties, as gathered from a construction of the contract they have made, is the real test of the existence of a partnership." See, also, Mechem, Partnership §§10, 11.

Many conflicting cases are presented in the books arising upon special facts, which it would be impracticable to review, or to state the grounds of, except one case in this State—*Coleman* v. *Coleman* (1881), 78 Ind. 344.

That case presented no question of a *de facto* corporation, or of estoppel. It simply held, in affirmance of the judgment, that the action could not be maintained upon the theory of the complaint, for if there were no incorporation whereby the members became liable as copartners, the liability was against all, and not against those only who were sued. It is not decisive of the question here. There is no claim made here that appellees were copartners before attempting to act as incorporators, or that they held themselves out as copartners, but the contrary. There is no claim that they did not in good faith believe themselves to be incorporated, and dealt in that belief, except the allegation (which is a conclusion) that they concealed their true relation, and that appellant dealt with them entertaining that belief, and in reliance upon it, at a time when they might have been legally incorporated. The third paragraph shows some attempt to comply with the statutes, and the fourth does not negative such attempt. Under these pleadings we

think the paragraphs disclose such a state of facts as to invoke the court's construction of these facts, and that the statement that the appellees were partners can be construed only as the pleaders' conclusion from the other allegations.

We do not deem it essential to this inquiry to determine under the facts found whether there was any corporation formed under the act of January 14, 1850. Local Laws 1850 p. 30. We point out, however, that this act is quite different from the act reviewed in the case of *Stoops* v. *Greensburgh, etc., Plankroad Co.* (1857), 10 Ind. 47, for in that case certain specifically named persons were constituted a corporation, while in this case, certain persons are named as commissioners to receive stock subscriptions, and are not incorporators, but it does not follow that a corporation may not have been formed either with or without their intervention. *Judah* v. *American, etc., Ins. Co.* (1853), 4 Ind. 333.

If the special charter of 1850 was not accepted prior to the taking effect of the new Constitution on November 1, 1851, it could not be thereafter adopted, nor a corporation organized under it. *Snyder* v. *Studebaker* (1862), 19 Ind. 462; *State* v. *Dawson* (1861), 16 Ind. 40.

Nor could the franchise to be a corporation be alienated without the consent of the State, in the absence of express provision therefor, so that the charter, as such, could not be the subject of barter or sale. *State, ex rel.,* v. *Hare* (1889), 121 Ind. 308; *Louisville, etc., R. Co.* v. *Boney* (1889), 117 Ind. 501, 3 L. R. A. 435; *Hall* v. *Sullivan R. Co.* (1857), Fed. Cas. No. 5,948; *Arkansas* v. *Choctaw, etc., R. Co.* (1905), 134 Fed. 106; *Galveston Railroad* v. *Cowdrey* (1870), 11 Wall. 459, 20 L. Ed. 199; *Memphis, etc., R. Co.* v. *Railroad Commissioners* (1884), 112 U. S. 609, 5 Sup. Ct. 299, 28 L. Ed. 837; *Richardson* v. *Sibley* (1865), 11 Allen 65, 87 Am. Dec. 700; *Commonwealth* v. *Smith* (1865),

10 Allen 448, 87 Am. Dec. 672; *Fietsam* v. *Hay* (1887), 122
Ill. 293, 13 N. E. 501, 3 Am. St. 492; 1 Clark & Marshall,
Priv. Corp. p. 447; 2 Clark & Marshall, Priv. Corp. p. 978;
10 Cyc. 1091, 1186.

But there were general laws of the State of Indiana that
did authorize the formation of corporations for the purpose
of carrying on the business of fire insurance, and
there was some attempt at complying with the re-
quirements of the act of 1850 (Local Laws 1850 p. 30),
in assuming the various names adopted by those who claimed
to be incorporated, and in acting under legislation author-
izing the acts performed, such as change of name and
location, limiting liability, etc. In all other respects
the provisions of the general law were followed in electing
directors and officers, the provisions being quite similar.
We call attention to this state of facts, and of the law, for
the purpose of pointing out that there was a pretense of
exercising corporate functions under express legislative rec-
ognition. Precisely the same things were done as to the
business carried on under the various names authorized
under the general laws then in force, and by the same methods
prescribed under the general laws. They exercised the
functions and powers under, and claimed the rights and
privileges granted by, the act of 1850, *supra,* but those powers
and privileges are practically the same as are conferred by the
general laws, save as to the question of liability. Appellant
dealt with them as a corporation. As there was a law under
which incorporation might have been consummated, neither
he nor appellees will be heard to deny a *de facto* corporation,
under such general law, at the time of making the contract.
*Snyder* v. *Studebaker, supra; Clark* v. *American, etc., Coal Co.*
(1905), 165 Ind. 213; *Doty* v. *Patterson* (1900), 155 Ind. 60;
*Bradford* v. *Frankfort, etc., R. Co.* (1895), 142 Ind. 383; *Baker*
v. *Neff* (1880), 73 Ind. 68; *Mullen* v. *Beech Grove Driving
Park* (1878), 64 Ind. 202; *Indiana Bond Co.* v. *Ogle* (1899),

22 Ind. App. 593, 72 Am. St. 326, and notes; *Georgia, etc.,
R. Co.* v. *Mercantile Trust, etc., Co.* (1894), 94 Ga. 306, 21
S. E. 701, 32 L. R A. 208, and notes.

It is wholly aside from the question here, that upon intervention by the State the exercise of the powers of a corporation under which the business was conducted would probably have been arrested, for only the State may interpose in a direct proceeding for that purpose, to question the rights asserted in cases where there is a valid law under which a *de jure* corporation may exist. *Clark* v. *American, etc., Coal Co., supra; Doty* v. *Patterson, supra; Marion Bond Co.* v. *Mexican Coffee, etc., Co.* (1903), 160 Ind. 558.

In order that there may be a *de facto* corporation, it must appear that there was (1) a valid law under which a corporation might have been formed, (2) a *bona fide* attempt to incorporate under such law, and (3) an actual exercise of such corporate powers. *Clark* v. *American, etc., Coal Co., supra; Doty* v. *Patterson, supra; Marion Bond Co.* v. *Mexican Coffee, etc., Co., supra.*

It is quite clear under the findings in this case that there was an actual exercise of corporate powers, and there was a valid law under which an insurance company might have been formed, but there was no attempt to incorporate under the general law, though there was a colorable attempt to incorporate under the act of 1850, *supra.* Even though appellees did not create a *de facto* corporation, they may so far avail themselves of the general law as to enable them to invoke the estoppel of a *de facto* corporation, as against one who has dealt with them as a corporation. *Georgia, etc., R. Co.* v. *Mercantile Trust, etc., Co., supra,* and cases cited in notes to L. R. A.

If it could be said that the attempted incorporation was void, and that no *de facto* corporation was created, it would follow, unless some estoppel intervened, that the stock was void, and there could be no recovery against the alleged holders. *Scovill* v. *Thayer* (1881), 105 U. S.

143, 26 L. Ed. 968; *American Tube Works* v. *Boston Mach. Co.* (1885), 139 Mass. 5, 29 N. E. 63; *Schierenberg* v. *Stephens* (1888), 32 Mo. App. 314.

We think that the true condition is that of a corporation *de facto* by virtue of the general law, and incident to which is the general statutory provision for the issuance of preferred stock in all corporations, the holders of which stock are subject to no liability, and in effect are preferred creditors over the holders of general and common stock. §§5093, 5096 Burns 1908, Acts 1893 p. 162, §1, Acts 1903 p. 220, §2.

All the appellees except McLain are shown to be preferred stockholders, and he is shown to be a pledgee, and his relation to the corporation is governed by the general laws of the State, by which the pledgee of stock is not liable as an owner. §4052 Burns 1908, §3008 R. S. 1881.

There is another phase of the case that is of controlling importance, and that is the one of mutual estoppel. From all that here appears, all parties were equally chargeable with knowledge of the corporate powers and obligations of those claiming an incorporation, and appellant clearly dealt with them as a corporation, in good faith, and in the belief that the company was duly incorporated, as did the alleged stockholders; and plaintiff is estopped, unless there was no law authorizing the formation of a corporation, to claim that appellees are partners. *Doty* v. *Patterson, supra,* and cases there collected; *Smelser* v. *Wayne, etc., Turnpike Co.* (1882), 82 Ind. 417; *Jones* v. *Kokomo Bldg. Assn.* (1881), 77 Ind. 340; *Baker* v. *Neff, supra; Mullen* v. *Beech Grove Driving Park, supra; Williams* v. *Franklin Tp., etc., Assn.* (1866), 26 Ind. 310; *Heaston* v. *Cincinnati, etc., R. Co.* (1861), 16 Ind. 275, 79 Am. Dec. 430; *Meikel* v. *German Sav., etc., Soc.* (1861), 16 Ind. 181; *Jones* v. *Cincinnati Type, etc., Co.* (1860), 14 Ind. 89; *Bradley* v. *Ely* (1900), 24 Ind. App. 2, 79 Am. St. 251; *Snider's Sons' Co.* v. *Troy* (1890), 91 Ala. 224, 8 South. 658, 11 L. R. A.

515, 24 Am. St. 887; *Central, etc., Assn.* v. *Alabama, etc., Ins. Co.* (1881), 70 Ala. 120; *Gartside Coal Co.* v. *Maxwell* (1884), 22 Fed. 197; 1 Clark & Marshall, Priv. Corp. pp. 61, 78, 222, 267; 1 Cook, Corporations (6th ed.) §234; Taylor, Priv. Corp. (3d ed.) §148; 2 Morawetz, Priv. Corp. §748.

There is no fraud nor lack of good faith found that would invoke an equitable estoppel by which appellees should be charged as partners. The only element that is wanting is an attempt to organize under a valid law; but the supposed corporation had been long acted upon before plaintiff contracted with the Equitable Insurance Company. It had received legislative recognition, and had been acquiesced in by the State, and appellant had dealt with it with no other idea than that it was incorporated, and with no idea of a partnership. *Gibbs's Estate* (1893), 157 Pa. St. 59, 27 Atl. 383, 22 L. R. A. 276; *Ward* v. *Brigham* (1879), 127 Mass. 24; *American Salt Co.* v. *Heidenheimer* (1891), 80 Tex. 344, 15 S. W. 1038, 26 Am. St. 743; *Finnegan* v. *Noerenberg* (1893), 52 Minn. 239, 53 N. W. 1150, 38 Am. St. 552, 18 L. R. A. 778; *Rutherford* v. *Hill* (1892), 22 Ore. 218, 29 Pac. 1038, 29 Am. St. 596, 17 L. R. A. 549; *Merriman* v. *Magiveny* (1873), 12 Heisk. (Tenn.) 494; *Cannon* v. *Brush Electric Co.* (1902), 96 Md. 446, 54 Atl. 121, 94 Am. St. 584.

None of appellees were holders of common stock when the contract of insurance was made, and the only statutory provision for the issuance of preferred stock expressly 10. relieved them from liability. They were entitled to valid preferred stock, which, in effect, made them only preferred creditors. The courts have no power to make a new contract of personal liability for them. *Richardson & Co.* v. *Carlton* (1899), 109 Iowa 515, 80 N. W. 532; *Safe Deposit, etc., Co.* v. *Cahn* (1905), 102 Md. 530, 62 Atl. 819; *Webster* v. *Lanum* (1905), 137 Fed. 376, 70 C. C. A. 56; *Buckle* v. *Iler* (1903), 81 N. Y. Supp. 631, 40 Misc. 214; *Ussery* v. *Crusman* (1898), 47 S. W. (Tenn. Ch.) 567;

*Scovill* v. *Thayer, supra; American Tube Works* v. *Boston Mach. Co., supra; Schierenberg* v. *Stephens, supra.*

We think there is no harmful error shown, and the judgment is affirmed.