**EDWARD SHOES, INC., et al.**

v.

**Herschel ORENSTEIN et al.**

**Civ. No. 69 H 121.**

United States District Court,
N. D. Indiana,
Hammond Division.

Nov. 3, 1971.

James Whitaker, Hammond, Ind., for plaintiff.

Bamberger & Feibleman, Indianapolis, Ind., Lucas, Clifford & Wildermuth, Gary, Ind., for intervening plaintiffs.

Armand Prete, Gary, Ind., Morton Efron, Hammond, Ind., Gilbert Gruenberg, Gary, Ind., Saul Ruman, Hammond, Ind., Harold Richter, Chicago, Ill., for defendants.

## MEMORANDUM

BEAMER, District Judge.

This is an action for declaratory relief and damages. Defendants are shareholders of a bankrupt business presently known as Gary Bootery, Inc. Plaintiffs, including intervening plaintiffs, are among its creditors. Plaintiffs contend that a substantial part of the Bootery's debts were contracted after its articles of incorporation had been revoked, and that defendants should therefore be held liable for those debts as partners. The case is now before the court on cross-motions for summary judgment by the intervening plaintiffs and by some of the defendants.

The relevant facts are undisputed. On March 16, 1961, articles of incorporation were filed with the Indiana secretary of state's office for a corporation called Discount Shoe City, Inc. On December 17, 1962, the articles were amended to change the corporation's name to Quality Shoes, Inc. On November 17, 1965, acting pursuant to Burns Ind.Stats. § 25–417,[1] IC 1971, 23–3–5–1, the secretary of the state gave notice

1. The statute provides in pertinent part as follows:

If the annual reports of any corporation * * * be not filed in the office of the secretary of state for two [2] full consecutive years, the secretary of state shall send a notice by registered mail, to the corporation and to one of the officers thereof at their last known addresses as shown on the records of the secretary of state, * * *

If said corporation shall not submit for filing all delinquent annual reports in the office of the secretary of state as required by law, * * * then, within not less than thirty [30] days nor more than ninety [90] days from the date said notices are deposited in the United States mails, the secretary of state shall make an indorsement over his signature upon the articles of incorporation of said corporations stating that said annual reports are delinquent * * *, whereupon all of the rights and privileges of such corporation to carry on and transact business shall stand revoked and its articles of incorporation shall be forfeited * * *.

that the corporation had failed to file its annual report for two or more consecutive years. Receiving no response, on December 27, 1965, the secretary declared the corporation's article revoked.

The complaint does not allege that any of the defendants ever had actual knowledge of the revocation until three years after the fact; and it appears, albeit inconclusively,[2] from the affidavits of defendants Saul and Beverlee Ruman, that despite full compliance by the secretary of state's office with the statutory notice requirements, neither of the two delinquency notices ever reached either the corporation or any of the defendants, and that defendants were in fact unaware of the secretary of state's actions until long afterwards.

The firm continued in business under the same name, contracting various debts, until early 1969. On February 17, 1969, creditors filed a petition for involuntary bankruptcy, alleging in the petition that the articles had been revoked and seeking an adjudication that the business was a partnership or an unincorporated association. The shareholders held a meeting on February 25, 1969, and adopted articles of amendment changing the firm's name to "Gary Bootery, Inc."[3] The articles of amendment were filed the following day in the secretary of state's office, along with the delinquent annual reports,[4] and that same day the secretary issued a certificate of reinstatement[5] and approved the articles of amendment. The shareholders then caused the firm to file a voluntary petition in bankruptcy under its new name, and the referee ordered the two proceedings consolidated. The present action ensued.

Burns Ind.Stats. § 25–254, IC 1971, 23–1–10–5 provides in pertinent part as follows:

> Any person or persons who *knowingly and wilfully and with intent to defraud* shall pretend to be a corporation, or shall exercise or attempt to exercise any powers, privileges or franchises or use the name of any corporation or pretended corporation, * * * after it has been dissolved or its articles of incorporation canceled, * * * shall be deemed to be guilty of a felony * * * and shall be jointly and severally liable for all debts and liabilities made or incurred by them in the name of such corporation, or pretended corporation [emphasis added].

As far as the court can determine, no case has ever been decided under this

2. The Rumans are obviously not competent to testify concerning the knowledge of the other shareholders, cf. Rule 56(e), F.R. C.P.; but the evidence before the court at this stage suggests strongly that their statements are correct. The original articles of incorporation listed the address of the firm's principal office as "5305 Hohman Avenue, Hammond, Indiana." This was an office building containing, among other offices, the office of defendant Ruman, who served as the corporation's resident agent. The receipt for certified mail from the secretary of state's office reveals that the corporation's delinquency notice was sent to "Quality Shoes Inc." at that address, and defendant Ruman's uncontradicted affidavit states that he never received, rejected, or had knowledge of the notice, presumably because there was no "Quality Shoes Inc." listed at his address and the notice was never delivered. The other notice was sent to Mr. Leonard Kipnis, one of the original directors, at his address in Chicago, and the return receipt indicates that Kipnis received it, but Ruman's uncontradicted affidavit states that Kipnis was no longer associated with the corporation at that time, and did not pass the notice on either to the Rumans or to any of the other shareholders.

3. The name "Quality Shoes, Inc." had apparently been assigned to another corporation between 1965 and 1969, when the secretary of state's records showed that the old "Quality Shoes, Inc." was no longer authorized to do business.

4. The certificate of reinstatement recites that the "necessary annual reports and fees" had been filed.

5. The court's resolution of this matter, *infra*, renders it unnecessary to pass on the effectiveness of a purported reinstatement prior to the passage of Senate Enrolled Act No. 614 (1971).

statute; but if, as defendants contend, the statute is the sole source of shareholder liability under Indiana law, it disposes of this case. The complaint does not allege that any of the defendants had actual knowledge that the corporation's articles had been revoked until after all of the debts in question had already been contracted, and there is no claim of wilfulness or intent to defraud.

Plaintiffs contend that the statute does not pre-empt the field, and rely instead on the common law doctrine that absent valid incorporation, business associates should be treated as partners.

■ At the outset, the court has considerable doubt that defendants could be held liable even under the doctrine relied on by the plaintiffs. In most jurisdictions, including Indiana, that doctrine has been riddled with exceptions, the best known being the "de facto doctrine." *See* Doty v. Patterson, 155 Ind. 60, 56 N.E. 668 (1900). But entirely apart from the de facto doctrine, substantial authority exists in Indiana for the proposition that absent fraud, a creditor who deals with an entity purporting to be a corporation, and relies only on the credit of the supposed corporation, is estopped from holding the shareholders liable as partners. In Jennings v. Dark, 175 Ind. 332, 92 N.E. 778 (1910), there was a serious question as to whether or not the defendants had made a sufficient attempt at incorporation to avail themselves of the de facto doctrine. The Indiana Supreme Court nonetheless affirmed a decision in their favor, with the following comments:

There is another phase of the case which is of controlling importance, and that is the one of mutual estoppel. From all that here appears all parties were equally chargeable with knowledge of the corporate powers and obligations of those claiming incorporation, and appellant clearly dealt as with a corporation, in good faith, and in the belief that it was duly incorporated, as did the alleged stockholders, and he is estopped, unless there was no law authorizing the formation of a corporation, to claim that appellees are partners. * * * There is no fraud, or lack of good faith found which would invoke an equitable estoppel by which appellees should be charged as partners. 92 N.E. at 782–783.

The other Indiana cases on shareholder liability are mixed, and burdened with dicta of questionable weight, but a careful review reveals no case where shareholders were ever held individually liable to creditors who thought they were dealing with a corporation.

■ However, it is unnecessary to make a conclusive determination concerning the parties' rights at common law, since the court is of the opinion that Burns Ind.Stats. § 25–254, IC 1971, 23–1–10–5 superseded the common law and is now the sole source of shareholder liability in Indiana. While no legislative history is available, it is known that the statute was enacted in 1929, as a part of Indiana's first general corporation act. One of the objects of that act was to substitute a comprehensive code for the bits and pieces of legislation, strung together by confusing and at times conflicting case law, that had formerly regulated corporate existence in Indiana. In no area was the case law more confusing and conflicting than in the area of shareholder liability.

■ The statute does not depart significantly from the common law as expressed in Jennings v. Dark, *supra*. It covers the same field and dictates substantially the same results. In *Jennings*, the court implied that even if shareholders did purport to be doing business as a corporation, they could be held personally liable to creditors only if they acted fraudulently or in bad faith. 92 N.E. at 783. This is the law under the statute. The inescapable conclusion is that the statute was drafted in light of existing case law, and intended to pre-empt the field.

If the common law were as plaintiffs claim, and had been intended to survive the enactment of the statute, the stat-

ute's provisions for civil liability would have been redundant. Shareholders who continued doing business under the corporate name after its charter had been revoked would have been jointly and severally liable as partners irrespective of intent. The statute's civil liability provisions have meaning only if the statute was intended to supplant the common law.

The complaint thus fails to state a claim upon which relief can be granted, since it fails to allege that defendants acted knowingly, wilfully, or with intent to defraud when they contracted the debts in question on behalf of the supposed corporation. Under the circumstances, it would be a mere formality to require a separate motion before entering judgment in favor of the nonmoving defendants. The court therefore grants the motions for summary judgment filed by the moving defendants, and on its own motion dismisses the complaint as to the remainder. *Cf.* 6 Moore, Federal Practice, ¶56.12.