SUNMAN-DEARBORN COMMUNITY SCHOOL CORPORATION. v. KRAL-ZEPF-FREITAG & ASSOCIATES.

[No. 1-1274A180. Filed December 23, 1975. Rehearing denied January 30, 1976. Transfer denied August 4, 1976.]

*William Greeman, Wycoff, Greeman & Kellerman,* of Batesville, *Alan H. Lobley, D. Robert Webster, Ice Miller Donadio & Ryan,* of Indianapolis, for appellant.

*Jack R. Shields, Shields & Westhafer,* of Batesville, for appellee.

LYBROOK, J.—Plaintiff-appellee Kral-Zepf-Freitag & Associates (Kral) initiated this action against defendant-appellant Sunman-Dearborn Community School Corporation (Sunman-Dearborn) seeking judgment for the reasonable value of architectural and engineering services rendered pursuant to two written contracts. From a judgment in favor of Kral in the sum of $54,350.00 plus costs, Sunman-Dearborn appeals. The issues presented center upon the sufficiency of the evidence to sustain the judgment. For reasons hereinafter stated, we reverse.

Defendant Sunman-Dearborn was not in existence at the time of the execution of the contracts in controversy. It is the product of the consolidation of six separate school townships in Dearborn County plus a part of a school township in Ripley County and succeeded to the statutory authority for the planning, construction and operation of schools and school systems which had, at the time of the execution of the contracts, been vested in the respective township school trustees.

The parties to the first contract, which was executed in 1963, were recited in the instrument to be Kral and "Miller-Logan-Harrison Consolidated School of Dearborn County." The then school trustees of Miller, Logan and Harrison Townships signed the contract on behalf of the latter named party. Pursuant to the contract, Kral was to provide architectural and engineering services for the construction of "an additional building at the existing Miller-Logan-Harrison School Site."

The second contract, executed June 27, 1967, purported to be between Kral and the "North Dearborn Elementary School Building Corporation." Thereunder, Kral was to provide architectural and engineering services in construction of "a new elementary school building in Dearborn County." The

then school trustees of Miller, York and Logan Townships signed on behalf of the latter named party.

North Dearborn Elementary School Building Corporation was incorporated in September, 1967. Prior to the initiation of the instant action, it made an assignment for the benefit of creditors and underwent liquidation proceedings in the Dearborn Circuit Court. Kral did not file a claim in that proceeding.

Though for reasons not relevant herein the buildings contemplated by the contracts were never constructed, Kral performed services in the stipulated value of $48,150.00, for which payment was never received.

## I.

The first question presented is that of the identity of the parties to the contract of June 27, 1967. It cannot be questioned that Sunman-Dearborn succeeded to the valid contractual rights and obligations of its predecessor school townships. See, IC 1971, 20-4-1-26(10) (Burns Code Ed.). However, Sunman-Dearborn argues that the trustees did not execute the contract in their capacities as school trustees, but rather signed as representatives of the building corporation named therein, an entity the rights and liabilities of which Sunman-Dearborn did not assume.

As a general rule, the identity of the parties to a contract is ascertained from an examination of the written instrument, and in the absence of ambiguity, the determination of who is liable is resolved by legal construction of its terms. See, 17A C.J.S., *Contracts* § 346. The contract here in question clearly designates as a party the North Dearborn Elementary School Building Corporation, as opposed to the respective school townships. Further, two of the three township trustees executing the contract qualified their signatures indicating their capacities as officers of the building corporation.

Kral, however, insists that the trustees signed not as agents of the corporation but as school trustees, thereby binding their respective school townships. This argument stems from the fact that the certificate of incorporation of the building corporation is dated September 25, 1967, nearly three months subsequent to the execution of the contract in question.

A crucial omission in Kral's approach is its failure to recognize the possibility of *de facto* existence of the building corporation at the time of execution of the contract, thereby rendering it for all practical purposes a corporate body with contractual powers. In an action on a contract with a *de facto* corporation, neither the purported corporate entity nor the party dealing with it as such may question its *de jure* existence. *Doty* v. *Patterson* (1900), 155 Ind. 60, 56 N.E. 668; *Aetna Life Insurance Co.* v. *Weatherhogg* (1936), 103 Ind. App. 506, 4 N.E.2d 679.

*De facto* corporate existence requires (1) a valid law under which the corporation might have been formed, (2) a *bona fide* attempt to incorporate under that law, and (3) an actual exercise of corporate powers. *Jennings* v. *Dark* (1910), 175 Ind. 332, 92 N.E. 778.

Though the articles of incorporation of the building corporation post date the contract in question, there is some evidence of an attempted organization on a not-for-profit basis prior to entry into the contract. Legal necessity required reincorporation to a for-profit entity. However, examination of the testimony of the trustees who executed the contract as purported representatives of the corporation reveals a somewhat less than perfect example of the conduct of business in proper corporate form. For example, the trustees testified that they held their respective corporate offices by mere agreement among themselves rather than by election. Further, the evidence reveals that a meeting of stockholders was never held.

Though upon the state of the record before us doubt might arise concerning the *de facto* existence of the building corporation, it appears that the question need not be resolved for purposes of this appeal. *Jennings* v. *Dark, supra,* indicates that *de facto* existence is not in all instances a prerequisite to application of the principle of estoppel to deny corporate existence. Therein, the court declined to impose liability on shareholders as partners despite serious question as to whether *de facto* corporate existence had been achieved. The principle set forth in that decision was aptly stated in *Edward Shoes, Inc.* v. *Orenstein* (N.D. Ind. 1971), 333 F.Supp. 39 as follows:

"[E]ntirely apart from the de facto doctrine, substantial authority exists in Indiana for the proposition that absent fraud, a creditor who deals with an entity purporting to be a corporation, and relies only on the credit of the supposed corporation, is estopped from holding the shareholders liable as partners. In *Jennings* v. *Dark,* 175 Ind. 332, 92 N.E. 778 (1910), there was a serious question as to whether or not the defendants had made a sufficient attempt at incorporation to avail themselves of the de facto doctrine. The Indiana Supreme Court nonetheless affirmed a decision in their favor, with the following comments:

'There is another phase of the case which is of controlling importance, and that is the one of mutual estoppel. From all that here appears all parties were equally chargeable with knowledge of the corporate powers and obligations of those claiming incorporation, and appellant clearly dealt as with a corporation, in good faith, and in the belief that it was duly incorporated, as did the alleged stockholders, and he is estopped, unless there was no law authorizing the formation of a corporation, to claim that appellees are partners. * * * There is no fraud, or lack of good faith found which would invoke an equitable estoppel by which appellees should be charged as partners.' "

In the case at bar, George Kral testified that he believed the building corporation to be in existence at the time of execution of the contract. Further, there is no evidence of fraud or lack of good faith on the part of the township trustees. Therefore we are of the

opinion that Kral was precluded from asserting nonexistence of the building corporation at the time of execution of the contract.

It follows that due to the absence of ambiguity on its face, the parties to the contract of June 27, 1967, were Kral and the North Dearborn Elementary School Building ▮ Corporation. Absent evidence entitling Kral to reformation on the ground of mutual mistake, Sunman-Dearborn's predecessor school townships were not bound by the agreement.

In *Pearson* v. *Winfield* (1974), 160 Ind. App. 613, 313 N.E.2d 95, we set forth the principles underlying the doctrine of reformation for mutual mistake as found in *Citizens National Bank of Attica* v. *Judy* (1896), 146 Ind. 322, 43 N.E. 259:

> " '. . . it is only possible for a written contract to be reformed, when the parties have actually made a contract which is different in its terms from the contract which had been reduced to writing . . . There can be no rectification, however, unless it is proved that both parties were mistaken in the use of the terms to be corrected, and that both parties agreed to the contract sought to be substituted for that to be set aside. In each term of the contract to be thus set up, it must be proved that the parties concurred. To a contract, concurrence of minds is essential, and no substitution of an amended contract can be made without showing that the parties concurred in the amended contract.
>
> \* \* \*
>
> " 'Therefore, to authorize a reformation, the misunderstanding must have been mutual; and a rectification will only be permitted where both parties have executed the instrument under a common mistake, and have done what neither of them intended. In every case, it must clearly and satisfactorily appear that the precise terms of the contract had been orally agreed upon, and that the writing afterwards signed fails to be, as it was intended, an execution of such previous agreement, but, on the contrary, expresses a different contract, and that this is the result of mutual mistake.' "

We then summarized:

> "A party seeking reformation on the ground of mutual mistake must establish by clear and satisfactory proof the true intentions common to all parties to the instrument, that a mistake was made, and that the mistake was mutual and consequently the instrument, as written, does not state the true intention or agreement of the parties.
>
> "The primary purpose of reformation is to effectuate the common intentions of all parties to an instrument which were incorrectly reduced to writing. It follows that a grant of reformation is necessarily predicated upon a prior understanding between all parties on all essential terms. Otherwise, there would be no standard to which an instrument could be reformed." See also, *First Equity Security Life Insurance Co.* v. *Keith* (1975), 164 Ind. App. 412, 329 N.E.2d 45, and cases cited therein.

All of the signatories to the contract testified without objection as to their intent at the time of its execution. George Kral testified that he assumed the trustees were binding their respective townships in executing the contract. He stated that it was his understanding that formation of the building corporation was a legal necessity for raising funds for construction of the school. However, he viewed the corporation as a mere vehicle for funding and stated that it was his understanding that the trustees and their townships would remain primarily liable for payment of the architectural fees.

Two of the three trustees who signed the contract testified that they assumed the respective townships would remain liable for payment of architectural fees. They further stated that their township budgets for the years 1967 and 1968 included funds appropriated for payment of architectural fees. One of the trustees stated that he submitted his 1968 budget in August of 1967, nearly two months after execution of the contract. The remaining trustee expressed an opinion contrary to his two colleagues stating that he did not feel his township bound by the contract.

Viewing all of this evidence in a light most favorable to the appellee Kral, we are of the opinion that the trial court could have found clear and convincing evidence that the parties did not intend by execution of the 1967 contract to release the school townships from liability for payment of architectural fees. Therefore, to the extent that the contract by its terms failed to bind the school townships in accordance with the parties' true intentions, Karl was entitled to reformation on the ground of mutual mistake.

## II.

Sunman-Dearborn argues that Kral failed to demonstrate that the contracts in question were enforceable against the respective school townships due to insufficiency of the evidence to establish that they were executed in compliance with the procedures prescribed by IC 1971, 17-4-28-1, *et seq.* (Burns Code Ed.), more commonly known as the Township Reform Act.

Initially, reliance is placed on IC 1971, 17-4-29-4 (Burns Code Ed.), which provides in part:

*"Buildings and supplies—Specifications.*—If a trustee finds it necessary to erect a new schoolhouse, he shall procure suitable specifications therefor, to be used by the bidders in bidding and in the construction of such house. If he desires to purchase any school furniture, fixtures, maps, charts or other school supplies, excepting fuel and literary periodicals in such amounts as may be authorized by the advisory board in any year, he shall make an estimate of the kinds and amounts, itemized particularly, to be used by bidders therefor. If it is necessary to make repairs on or about the schoolhouses, other than current or incidental repairs, he shall likewise make an itemized statement of the nature and character of the work to be made, for the use of bidders. He shall, in like manner, make a schedule of such work as may be necessary in the repair or construction of bridges in his township for any one [1] year. . . ."

The remainder of this section prescribes the procedures for the advertisement for bids and the letting of contracts for

buildings and supplies. This section, however, is not dispositive of the question raised by this issue. In *Cress, Trustee* v. *State* (1926), 198 Ind. 323, 152 N.E. 822, our Supreme Court held that the procedures for notice and letting of bids do not apply to the employment of architects for the purpose of drawing plans and specifications to be used by the bidders.

Relevant to our present inquiry are IC 1971, 17-4-28-1 and 17-4-29-3 (Burns Code Ed.). These sections, the provisions of which we need not now reproduce, have been construed to require (1) authorization and approval by the township advisory boards of contracts executed by the trustees, (2) appropriations of funds for payment of the services contemplated and (3) a written record of the authorizations, approvals and appropriations. See, *State ex rel. Claude* v. *Parrish* (1912), 180 Ind. 63, 99 N.E. 977; *Railroad School Township* v. *First State Bank* (1920), 73 Ind. App. 358, 126 N.E. 342; *Gaddis* v. *Barton School Township* (1929), 89 Ind. App. 369, 164 N.E. 499; *Heeter* v. *Western Boone County Community School Corp.* (1970), 147 Ind. App. 153, 259 N.E.2d 99.

IC 1971, 17-4-29-5 (Burns Code Ed.) provides that all contracts made in violation of the Township Reform Act shall be null and void. Pursuant to this mandate, the above cited cases, three of which involved payment of architectural fees, together with numerous other decisions, have held that absent compliance with the above listed requirements, contracts entered into by the trustees, though fully executed, may not be enforced against the school townships, and no recovery in *quantum meruit* may be had.

Closely analogous to the instant case is *Heeter* v. *Western Boone County Community School Corp., supra*. Therein, the plaintiff-appellant, a licensed architect, brought an action in *quantum meruit* against the defendant-appellee school corporation. This court held that in the absence of a written

record made by the advisory board in regard to the services rendered, the appellant could not recover for work performed for the school corporations' predecessor school township. We reasoned as follows:

"The Appellee contends that at the inception of any purported contract with the Appellant the Thorntown School was operated as a township school and therefore the so-called Township Reform Act of 1899 . . . would apply. The Appellee is correct with reference to the application of the Township Reform Act as to any services rendered by the Appellant while the Thorntown School was operated as a township school. [IC 1971, 17-4-29-3 (Burns Code Ed.)], provides:

'Special meetings—Loans.—Upon a special call of the township trustee, or the chairman of the advisory board or a majority of the members of said board, given in writing to each member thereof, stating the time, place and purpose of the meeting, said board may, if a quorum be present, by consent of a majority of all the members present, determine whether an emergency exists for the expenditure of any sums not included in the existing estimates and levy. In the event that such an emergency is found to exist, said board may authorize, by special order entered and signed upon the record, the trustee to borrow a sum of money, to be named, sufficient to meet such emergency; and, at the next annual session of the board, a levy shall be made to the credit of the fund for which such expenditure is made to cover and pay the debt so created:

\* \* \*

'In no event shall a debt of the township be created except by the advisory board of such township, and in the manner herein specified, and any payment of any debt not so authorized from the public funds of such township shall be recoverable upon the bond of the trustee, in a suit which it is hereby made the duty of said board to institute and prosecute, in the name of the state, for the use of said township. \* \* \*'

[IC 1971, 17-4-29-5 (Burns Code Ed.)] provides:

'Contracts void.—All contracts made in violation of this act shall be null and void.'

"In *Peck-Williamson, etc. Co.* v. *Steen School Tp.*, 30 Ind. App. 637, 639, 66 N.E. 909 (1902), this court stated:

'A claim against a township is not valid unless it is founded upon a statute, or upon a contract entered into with the proper person in accordance with the provisions of the statute. *Sherfey, etc., Co.* v. *Board, etc.*, 26 Ind. App. 66; *Martin* v. *Board, etc.*, 27 Ind. App. 98. The complaint contains no averment tending to show a compliance by the trustee with the statute. Section eleven is therefore applicable. 'All contracts made in violation of this act shall be null and void.' § 8085k Burns 1901.

'There can be no recovery upon the notes. *Neither can there be a recovery upon the quantum meruit.* It is common knowledge that under the law as it formerly stood extravagant and fraudulent purchases by trustees were frequently made. The act was designed to remedy an existing evil. Its provisions are not formal, but material and substantial. The trustee who does not observe them can not bind his township, either directly or indirectly. The contract made by him otherwise is void. Being void, it can not be ratified. No subsequent act can estop the township from setting up its invalidity. The delivery and acceptance of goods under it does not create an obligation to pay therefor. So to hold would be to nullify the act and to declare that a void contract could be made valid by being persisted in. *Wrought Iron Bridge Co.* v. *Board, etc., supra; Dickinson* v. *City of Poughkeepsie,* 75 N.Y. 65; *McGillivray* v. *Joint School District,* 112 Wis. 354, 88 N.E. 310, 58 L.R.A. 100, 88 Am.St. 969; *Kramrath* v. *City of Albany,* 127 N.Y. 575; *La France Fire-Engine Co.* v. *City of Syracuse,* 68 N.Y. Supp. 894; *People, ex rel.,* v. *Gleason,* 121 N.Y. 631, 25 N.E. 4. (our emphasis)'

"In *First National Bank* v. *VanBuren School Township,* 47 Ind. App. 79, 86, 93 N.E. 863 (1910), this court stated: 'The trustee who seeks to bind his township must proceed in the manner provided by statute and within the powers given by statute. Otherwise his contracts are void, and no subsequent act can estop the township from setting up their invalidity. Nor can any action now be maintained against a township on a *quantum meruit. Peck-Williamson, etc., Co.* v. *Steel School Tp.* (1903), 30 Ind. App. 637; *Clinton School Tp.* v. *Lebanon Nat. Bank, supra; Lee* v. *York School Tp.* (1904), 163 Ind. 339.'

"In *Miller* v. *Jackson,* 178 Ind. 503, 519, 99 N.E. 102 (1912), our Supreme Court stated:

'Since the enactment of the act of 1899, *supra,* a contract made in violation of the statute is void, and a claimant

cannot recover thereunder anything from the township, even though the contract on claimant's part, has been fully executed.'

"We, therefore, hold that the Township Reform Act of 1899 completely bars Appellant's recovery, under any theory, during that period of time when he was dealing with the Sugar Creek Township School of Boone County, Indiana."

Turning to the case at bar, while there is some testimony from which it could be found that the budgets of certain of the school townships involved contained appropriations for the payment of architectural fees, we find no evidence of specific authorization and approval by the respective advisory boards of the two contracts here in question. Neither do we find evidence of any written records of such authorization and approval. Sunman-Dearborn therefore argues that the evidence is insufficient to support a finding that the contracts were valid obligations enforceable against the school townships.

In response, Kral argues (1) that the parties prior to trial stipulated the authority of the trustees to bind their respective school townships and (2) that non-compliance with the Township Reform Act constitutes an affirmative defense which was neither asserted in Sunman-Dearborn's responsive pleading as required by Ind. Rules of Procedure, Trial Rule 8(C), nor raised prior to the filing of its motion to correct errors.

The pre-trial stipulation to which Kral refers reads as follows:

"That during the time encompassed by this lawsuit and prior to the formation of defendant Sunman-Dearborn Community School Corporation or any legally constituted and existing school building corporation, the Township Trustees of Miller, Logan, Harrison and York Townships of Dearborn County, Indiana, acting as school township trustees, had full legal and statutory authority for the planning, construction and operation of schools and school systems within said townships."

We find nothing in this stipulation bearing upon the question of whether the particular contracts in issue were entered into in such a manner as to render them valid obligations enforceable against the school townships.

With respect to Kral's second contention, case law compels the conclusion that Sunman-Dearborn did not bear the burden of pleading and proving non-compliance with the Township Reform Act as a matter of avoidance or affirmative defense. As our Supreme Court wrote in *Mitchelltree School Township* v. *Hall* (1904), 163 Ind. 667, 72 N.E. 641:

> "It has been uniformly held that a township trustee is a special agent, possessing only statutory powers, and can only bind the township when authorized by statute and in the manner specified therein, and that all who deal with him must, at their peril, take notice of the extent of his authority, and the party seeking to enforce a contract against a township for a debt contracted by the township trustee takes the burden of showing by allegation and proof that all the conditions existed which conferred authority upon the trustee to contract the debt." See also, *Henderson* v. *Middle Civil Township* (1913), 54 Ind. App. 396, 102 N.E. 968.

These cases compel the conclusion that Kral bore the burden of proving compliance with the requirements of the Township Reform Act as a condition to enforcement of the contracts in question.

As we have previously stated, the transcript of the evidence in the case at bar fails to reveal authorization and approval. The evidence is therefore insufficient to support the judgment in favor of Kral on its complaint.

Reversed and remanded for further proceedings not inconsistent with this opinion.

Robertson, C.J. and Lowdermilk, J., concur.

NOTE.—Reported at 338 N.E.2d 707.