**Quality Interiors, Inc.**
v.
**American Management and Development Corp.**
*[Cite as 8 AOA 651]*

*Case No. 89-T-4303*

*Trumbull County, (11th)*
*Decided December 7, 1990*

*Mark A. Beatrice, 1100 Bank One Building, Youngstown, Ohio 44503, for Plaintiff-Appellee.*

*Michael P. Marando, 203 Legal Arts Centre, Youngstown, Ohio 44503, for Defendants-Appellants.*

CHRISTLEY, P.J.

Appellant, Martin Perper, is a real estate developer from McLean, Virginia. In the early 1980's, appellant was a shareholder and an officer in a company known as the American Management and Development Corporation. This small construction company was formed in Virginia and was also licensed to do business in Maryland. After completing two projects, the company collapsed and its articles of incorporation were cancelled in both states.

In September 1985, appellant and a number of other individuals formed a limited partnership under the laws of this state. This partnership was known as the Youngstown No. 4-B Motel Associates. Under the partnership agreement, appellant was the sole general partner, while the remaining individuals were limited partners.

As one of its first acts, the partnership purchased a tract of land located in Liberty Township, Trumbull County, Ohio. The partnership then made plans to build a convention facility upon this property. This project was subsequently known as the Metroplex Holiday Inn Convention Center.

As part of the project, appellant contacted an architect from the Youngstown area. After some preliminary negotiations, the architect entered into an agreement to develop the schematic and preliminary design for the center. Under this agreement, the architect was also obligated, *inter alia*, to negotiate the contracts between the general contractor and the subcontractors.

While these preliminary matters were being concluded, the partnership attorney advised appellant that the partnership should form a separate corporation to act as the general contractor for the project. The attorney told appellant that the corporation was needed to shield the partnership from being liable for any accident which might occur on the job site. Accepting this advice, appellant told the attorney to form the corporation and to give it the same name as the Virginia company; *i.e.,* the American Management and Development Corporation.

In relation to the structure of this new corporation, appellant and the attorney agreed that there would be two directors: appellant and one of the limited partners. It was also agreed that the partnership would own all of the stock of the corporation.

In late October 1985, appellant apparently believed that the new corporation had been officially created and that business could be transacted. In the following months, the architect negotiated on behalf of the corporation a number of subcontracts with various companies. On the front of these contracts, the new corporation was designated as both the contractor and the owner.

In February 1986, the attorney informed appellant that in actuality, the articles of incorporation for the new corporation had never been filed with the state; as a result, the corporation did not officially exist. The attorney also stated that the name "American Management and Development" could not be used because it was already being used by another Ohio corporation. Appellant then told the attorney to file the articles under the name "Metroplex Management and Development Corporation." This was not done until May.

During the period preceding the filing of the articles of incorporation, the architect negotiated two subcontracts with appellee, Quality Interiors. As part of the process of obtaining the first subcontract, Jack Coffey, the sole owner of appellee, received a bid package concerning the job. This document provided that the bid proposals and accompanying bonds or certified checks had to be submitted to the American Management and Development Corporation. The document also referred to appellant.

The first subcontract between the corporation and appellee was signed in February,

while the second was signed in April. Like the other subcontracts, American Management and Development was designated as both the contractor and the owner on both agreements. In addition, both subcontracts were signed by the architect on behalf of the corporation.

In the following months, appellee completed performance on the contracted work. Appellee also performed additional work which increased the amount owed by the corporation. Pursuant to the subcontracts, appellee received a number of payments on the amount owed. These payments consisted of checks from the partnership not the corporation.

In February 1988, appellee initiated an action in the Trumbull County Court of Common Pleas against American Management and Development. The complaint alleged that the corporation still owed appellee a total of $41,986.98 under both subcontracts.

After the corporation had answered, the parties to the action agreed to submit the case to an arbitrator. Before this proceeding could take place, however, appellee moved to amend its complaint, based upon its recent discovery of the existence of the Virginia corporation. The trial court granted this motion.

In the amended complaint, appellant was added as a party to the action. In addition to the allegations which were contained in the first complaint, the amended complaint alleged that appellant was the principal owner of American Management and Development and was continuing to conduct business under that name even after the corporation had ceased to exist. The complaint further alleged that appellant was a party to the two subcontracts and was also liable for the amount owed.

Before appellant could answer, the arbitration hearing was held. The arbitrator then issued his report, finding in favor of appellee against the corporation only for the amount prayed for in the original complaint. The corporation did not appeal this decision to the trial court.

Following the entry of the arbitrator's report, appellant answered, raising a number of defenses. An answer was also filed by Metroplex Management and Development, even though this entity had not been added as a party to the action. Then, after appellant

and appellee had filed pretrial briefs, a one-day bench trial was held on the issue of appellant's personal liability for the amount owed under the arbitrator's award.

Based upon the evidence presented at trial, the trial court held that appellant was personally liable for the amount owed under the two subcontracts. The judgment was based upon the following grounds:

1. appellant could not rely upon the existence of the Virginia corporation to shield him from liability, since that particular corporation no longer existed;

2. since appellant continued to transact business under the name of the Virginia corporation, he was personally responsible for any new obligations;

3. appellant could not rely upon the Ohio version of American Management and Development to shield him, since the articles of incorporation for that company were never filed and the facts of the case does not support a finding that it was a *de facto* corporation;

4. appellant could not rely upon the existence of Metroplex Management and Development to shield him, since that corporation did not exist when the subcontracts were made and it had not subsequently adopted the subcontracts; and

5. even if Metroplex were a party to the subcontracts, appellee could pierce the corporate veil.

Appellant, Martin Perper, then filed a timely notice of appeal to this court. On that notice, American Management and Development was also named as an appellant. However, as at the trial level, the only issues before that court concern the liability of appellant, Martin Perper. For the sake of clarity, only Perper will be referred to as appellant in the discussion which follows.

Before this court, appellant has assigned the following as error:

"1. The trial court erred, as a matter of law, in finding that Defendant-Appellant Martin H. Perper was personally liable to Appellee.

"2. The trial court erred in finding Defendant Martin H. Perper personally liable to Appellee on the contracts entered into between Appellee and American Management and Development Corporation.'"

Under his first assignment of error, appellant challenges the second basis of the trial

court's holding, as listed in the foregoing discussion. In that part of its decision, the court held that appellant was personally liable for the amount still owed on the subcontracts because he continued to transact business under the name of the Virginia corporation after it had ceased to exist.

In reaching this conclusion, the trial court relied upon two recent appellate decisions. Appellant now contends that the court's reliance upon these cases was misplaced because they directly conflict with prior decisions of our Supreme Court.

The two cases upon which the trial court relied were *Chatman v. Day* (1982), 7 Ohio App. 3d 281 and *Nabakowski v. 5400 Corp.* (1986), 29 Ohio App. 3d 82. In *Chapman,* the president of a closely-held corporation signed a contract to perform certain services after the company's charter had been declared not in good standing. Relying on R.C. 1701.88(A), the Second Appellate District held that under those circumstances, the individual was no longer given protection under the law from personal responsibility.

R.C. 1701.88(A) is a part of the Corporation Act. That statute provides, in pertinent part, that if the articles of a corporation are cancelled, "*** the corporation shall cease to carry on business and shall do only such acts as are required to wind up its affairs, ***." Upon citing this language in its decision, the *Chapman* court stated:

"Under this section of the Corporation Act, the authority granted to a corporation by law is removed by the legislature for all purposes except such as are necessary to wind up its affairs. The language is explicit. *** The firm proscription in the Corporation Act, accompanied by authority for only a limited purpose, indicates an intention of the legislature to withdraw the power of such corporation and not to tolerate the use of lapsed corporations by individuals as a shield for continuing business under the name of a dead, defunct and possibly insolvent corporation." *Id.* at 82.

In arguing that the *Chapman* precedent conflicts with prior Supreme Court decisions, appellant cites a number of cases which were determined before R.C. 1701.88(A) was first enacted. See, *Sweeny v. Keystone Driller Co.* (1930), 122 Ohio St. 16 and *Eversman v. Ray Shipman Co.* (1926), 115 Ohio St. 269. These cases dealt with the effect of a tax statute which allowed the Secretary of State to cancel a corporation's articles when it failed to file a report or pay any tax or fee. A section of the statute also provided that the corporation could have the articles reinstated by paying an additional fee. In relation to the period before the reinstatement, the Supreme Court held that any transaction entered into by the corporation was not void. In reaching this conclusion, the court emphasized that the sections were merely designed to make the process of collecting the fees easier.

The statute at issue in *Sweeny* and *Eversman* is still a part of the Revised Code today. See, R.C. 5733.20 et seq. However, as the *Chapman* court notes, the power extended in the tax statute is extremely limited in comparison to the general proscription stated in R.C. 1701.88(A). In light of this language, this court agrees that *Sweeny* and *Eversman* are not binding. The language of R.C. 1701.88(A) is simply too explicit to allow for any different interpretation than that stated in *Chapman.* To permit officers of a corporation to continue to conduct business behind a shield of no liability when the articles have been cancelled or are nonexistent would render the statute meaningless and encourage fraud. Thus, appellant's first assignment is without merit.

Notwithstanding the foregoing analysis, the facts of this case raise a serious question as to whether the *Chapman* holding is applicable in this instance. This is one of the issues raised in appellant's second assignment. As part of this assignment, appellant argues that a finding that he was operating under the defunct Virginia corporation is against the manifest weight of the evidence. The record does not support this assertion.

Although the trial court did not make such a finding, any application of the *Chapman* holding to this case would have to be predicated upon finding that appellant was attempting to operate under the guise of the old American Management and Development. The record indicated that appellant authorized the use of the name "American Management and Development" in making the two subcontracts. During his testimony, Jack Coffey, the sole owner of appellee, stated that he thought the corporation he was dealing with was from Virginia. Given the state of the record, the trial court had sufficient

evidence before it to apply *Chapman* to the facts of this case.

According to appellant, the partnership attorney told him that the articles of incorporation for American Management and Development had been filed with the state in October 1985. Yet, it is also clear from the evidence that the corporation was never officially formed under that name. Moreover, as the trial court correctly noted, it is clear that a *de facto* corporation had not been established. Before a *de facto* corporation will be found, there must be colorable compliance with the laws governing incorporation. *Society Perun v. Cleveland* (1885), 43 Ohio St. 481. Again, in this case, the articles for American Management and Development were not even filed with the state.

However, the true status of the corporation was only known by the attorney and appellant. Coffey, as owner of appellee, clearly thought that he was dealing with a corporation and acted accordingly. This can be seen from his testimony concerning the location of the corporation. Traditionally, courts in this state have held that a person who enters into a transaction and treats an organization as a corporation will be estopped from denying the existence of the corporation. *Newburg Petroleum Co. v. Weare* (1875), 27 Ohio St. 343; *Peckham Iron Co. v. Harper* (1884), 41 Ohio St. 100. The harshness of this doctrine has recently been softened by the Twelfth Appellate District:

"We agree with appellants that the general rule is that where one treats a business as a corporation one is estopped to deny its legal existence as a corporation. Nevertheless, that general rule does not apply where, as here, it would be unfair to apply the doctrine and allow persons to benefit from their fraud. See *Edward Shoes, Inc. v. Orenstein* (N.D. Ind. 1971), 333 F. Supp. 39." *Huntington Bank v. Cartwright* (Oct. 6, 1982), Fayette App. No. 79-CA-3, unreported.

In the instant case, even though appellee considered American Management and Development to be a corporation, it is clear from the facts that it would be unfair to allow appellee's reliance to enable appellant to escape liability resulting from the partnership's failure to form a separate corporation.

As noted above, the trial court held that the facts were such that appellee would be entitled to pierce the subsequent corporate veil. The record supports this finding. First, this court notes, as the trial court did, that the corporation did not have any capital. All of the funds which were used to finance the project was held by the partnership. All of the payments to the subcontractors were made by the partnership, even though the corporation was the party to the subcontracts. Moreover, there is no indication that the partnership paid anything for the stock of the corporation.

Other factors also support the trial court's finding. According to the testimony of appellant, all of the stock of the corporation was owned by one entity, the partnership. In addition, the board of directors of the corporation was comprised of two partners, appellant and one of the limited partners.

When considered in the context of the entire case, the foregoing evidence is sufficient to support the trial court's finding. Pursuant to this analysis, appellant would then be personally liable for the debts of the corporation, since he was a general partner.

Finally, under his second assignment, appellant argues that he should not be held personally liable because he was not a party to the subcontracts and did not derive any benefits from them. However, it is clear from the record than the architect was acting as the agent of the corporation when he signed the documents Moreover, both Coffey and the architect testified that appellant was the only individual they dealt with in transacting business with the corporation. Thus, appellant's second assignment is also without merit.

*Judgment affirmed.*

MAHONEY, J., concurs in judgment only.

BAIRD, J., concurs.

MAHONEY, J., Ret., Ninth Appellate District, sitting by assignment.

BAIRD, J., Ninth Appellate District, sitting by assignment.